Dan Willies GUITON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–82–00694–CR.

Court of Appeals of Texas, Dallas.

Aug. 3, 1984.

Rehearing Denied Oct. 22, 1984.

Edgar A. Mason, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Anne B. Wetherholt, Asst. Dist. Atty., Dallas, for appellee.

Before AKIN, VANCE and ALLEN, JJ.

VANCE, Justice.

Appeal is from a jury conviction for unlawful possession of the controlled substance, heroin, with the intent to deliver. The court assessed punishment at sixteen years confinement. Appellant presents numerous grounds of error, but because we agree with ground of error nine, which attacks the sufficiency of evidence, we will address only that ground which is dispositive of the appeal. Consequently, we reverse and remand with instructions to enter a judgment of acquittal.

In the early morning hours of December 14, 1979, at approximately 6:00 o'clock, L.W. Walsh, working as a security officer at the Dallas-Ft. Worth Airport, discovered a pistol in a purse he was screening by the use of an x-ray machine. He immediately sounded an alarm that J.D. Harris of the Department of Public Safety at D/FW Airport answered. Harris took the purse and Mozelle LaMont, who claimed ownership of the purse, to his nearby office. LaMont was accompanied by a female named Jean Tucker. LaMont was arrested for carrying a prohibited weapon. Tucker was not taken into custody. LaMont told Harris that she was there to meet a friend named Dan coming from Los Angeles. She did not know his last name. Upon searching LaMont it was discovered that she had $1200 on her person. Harris had her criminal background checked and discovered that she had been "handled" four times on dan-

gerous drugs. Officer Virginia Davis placed Tucker under surveillance. She observed her meet the appellant, who was carrying a small black suitcase and a hang-up type bag, and after a short conversation, they separated with Tucker remaining at the airport and the appellant leaving in a taxi. Officer Davis furnished the cab number and name to J.G. Vineyard, a Detective Sergeant with the police at D/FW, who in turn contacted the cab company. About thirty minutes after the appellant left in the cab Officer Davis observed him return to the airport terminal, at which time he was only carrying the hang up bag. The appellant again met Tucker, and he and Tucker, along with a baby that she was carrying, left the terminal together. Officer Davis observed the appellant and Tucker, along with the child, get in a Cadillac and drive away. Davis immediately notified Vineyard and an Officer Pinkston, who was working patrol, and requested that Pinkston maintain surveillance until the Cadillac left the airport. Pinkston stopped the vehicle for improper change of lanes, but did not issue a citation and testified he really only wanted to get the identification of the appellant. He did not see any luggage in the vehicle.

Officer Vineyard, after checking with the cab company, had gone to the LaQuinta Motor Inn, Irving, Texas. There he met Officer Christy of the Irving Police Department. Vineyard went to the registration desk and observed a registration card that showed Dan Guiton had registered and was assigned room 289. Vineyard and Christy obtained a key to the room next to room 289, went to the room, and set up a surveillance on room 289 and the parking area. It appears that about two hours later the appellant, Tucker, along with the child, arrived at the motor inn, driving a Buick. The officers described how the appellant drove slowly, circling the inn and parking at the far end of the parking area. The Buick remained there for two or three min-

utes, then the appellant drove down and parked near room 289. The appellant and Tucker, who was carrying the child, got out of the car and immediately went upstairs to the door of room 289. Appellant reached up above the porch light and retrieved the room key. At this time Vineyard and Christy stepped out of the room next door. Vineyard said "Hello, how is it going." Appellant replied "Fine, thank you." Vineyard then asked if he had just come in from California. Appellant said that he had. Vineyard told him "We are narcotics officers." He also told him that he and Christy work drug smuggling. Vineyard testified that the appellant appeared to be nervous at this time. Vineyard then asked him "if he had any drugs on him." Appellant said no. Vineyard then asked if he could search him. Appellant said "Go ahead." Vineyard patted him down. Vineyard then asked him if he had any drugs in his room. Vineyard testified that he could not remember for sure what was said. The appellant either said "No, go ahead and look," or he said no, and then he was asked if he could look around, to which he said go ahead. The appellant unlocked the door and the officer went in and searched the room. After an extensive search the officers found heroin concealed inside a chair cushion. There was no contraband found in "plain view."[1] In addition to the furnishings of the motor inn the only other thing found in the room was a suitcase. Vineyard described it as small, black, type suitcase which would fit under the seat on a plane. Appellant and Turner were both arrested. At trial, the appellant did not testify.

▬ In determining the sufficiency of the evidence, it should first be noted that the court gave the jury the following limiting instructions:

You are further instructed that during the trial, certain evidence was admitted by the Court which you are instructed

---

1. The dissent states "According to the police officer, a large hump in the chair's cushion was obvious." The officers did not testify to the above. Officer Vineyard, who found the contra-

band, testified "It looked like a cushion with a giant lump in it." He did not even testify if the lump was visible before the cushion was moved at the time of the search of the chair.

you may consider only for limited purposes.

The testimony of the witness, J.D. Harris that another party had been handled for drug transactions, or words to that effect, and that a party was meeting someone named Dan on a Delta Flight from L.A., or words to that effect, were not admitted to prove the truth of such assertions, but for the limited purpose of showing the motive of the law enforcement agencies to investigate the conduct of the defendant, and you are not to consider such testimony for any other purposes.

The testimony of the witness Vineyard that he had seen the name Dan Guiton on a registration card at the La Quinta Hotel was not admitted for the purpose of establishing the truth of such assertion but for the limited purpose of showing the motive for the witness Vineyard to place the defendant under surveillance, and you are not to consider such testimony for any other purpose.

Therefore, it was not shown to whom room 289 had been rented.[2] No contraband was found on the appellant, nor did the appellant attempt to flee, or make any spontaneous utterances or furtive gestures upon being confronted by the officers. There was no evidence that the appellant had ever been in room 289. The suitcase found in the room was not connected to the appellant. There was no testimony that the suitcase was the same, similar to, or even appeared to be the same suitcase the appellant had in his possession at the airport.[3]

■■■ In order to prove the possession aspect of the offense charged, the State had to prove beyond a reasonable doubt (1) that the appellant exercised care, control, and management over the heroin; and (2) that the appellant knew that the same was contraband. *Naquin v. State,* 607 S.W.2d 583, 586 (Tex.Crim.App.1980); *Dubry v. State,* 582 S.W.2d 841, 843 (Tex.Crim.App. 1979); *Guitierrez v. State,* 533 S.W.2d 14, 15 (Tex.Crim.App.1976); *Curtis v. State,* 519 S.W.2d 883, 885 (Tex.Crim.App.1975). When the accused is not in exclusive possession of the place where the contraband is found it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Wiersing v. State,* 571 S.W.2d 188, 190 (Tex.Crim.App.1978); *Herrera v. State,* 561 S.W.2d 175, 179 (Tex.Crim.App. 1978) (*en banc*); *Barnes v. State,* 504 S.W.2d 450, 452 (Tex.Crim.App.1974). This burden of showing an affirmative link between the accused and the contraband rests upon the State. *Morr v. State,* 587 S.W.2d 711, 714 (Tex.Crim.App.1979); *Damron v. State,* 570 S.W.2d 933, 935 (Tex.Crim.App.1978); *Payne v. State,* 480 S.W.2d 732, 734 (Tex.Crim.App.1972). The only evidence connecting the appellant with the room in which the contraband was found was (1) that after he and Tucker, who was carrying the baby, got out of the Buick and walked upstairs, the appellant reached up and retrieved the key to the room, (2) that he became nervous, and (3) that when Vineyard asked if he had any drugs in *his* room, he said no. However, *his* room was not designated as room 289 in the conversation.

■■■ We hold that the State not only failed to prove beyond a reasonable doubt that the appellant was in exclusive control of room 289, but the State also failed to affirmatively link the appellant to the contraband sufficiently to show both knowledge of and control over the contraband. *See Presswood v. State,* 548 S.W.2d 398,

2. The dissent, in stating that "the evidence is undisputed that room 289 was rented to a man named Dan Guiton," fails to recognize that the trial court instructed the jury that the evidence of the registration card "was not admitted for the purpose of establishing the truth of such assertion but for the limited purpose of showing the motive for the witness Vineyard to place the defendant under surveillance, and you are not to consider such testimony for any other purpose."

3. There was absolutely no evidence that the suitcase found in room 289 was the black suitcase which Guiton had at the terminal as declared by the dissent.

400 (Tex.Crim.App.1977); *Carvajal v. State,* 529 S.W.2d 517, 520 (Tex.Crim.App. 1975).

We therefore sustain appellant's ninth ground of error that the evidence is insufficient to establish guilt. In view of our finding that the evidence is insufficient, the judgment is reversed and there can be no further prosecution of this cause. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The judgment is reversed and remanded with instructions to enter a judgment of acquittal.

AKIN, Justice, dissenting.

I cannot agree that the evidence is insufficient to prove that the appellant was in exclusive control of the motel room and to prove that the appellant had knowledge of the heroin as well as control over it. Instead, I would hold that the evidence is sufficient to prove that appellant had possession and control of the heroin. Consequently, I must dissent.

The majority's conclusion rests upon whether the appellant was in exclusive possession of the motel room in which the heroin was found. In this respect, the evidence is undisputed that room 289 was rented to a man named Dan Guiton from Los Angeles, California. It is also undisputed that Guiton went to room 289 and retrieved the key to the room which was concealed on a ledge above the door to room 289. After retrieving the key, Guiton opened the door. Before either Guiton or his female companion entered the room, Guiton permitted police officers to search the room where they found within a cushion of a chair a paper bag containing heroin. According to the police officer, a large hump in the chair's cushion was obvious. Neither clothes nor personal possessions were in the room nor was any luggage there apart from a small black suitcase, similar to the one which police officers had observed Guiton carrying at the air terminal shortly after his arrival from Los Angeles. From this evidence, I conclude that Guiton was in exclusive possession of the room containing the heroin.

Of significance is the small black suitcase which Guiton had with him at the terminal and which he carried when he departed from the terminal in a taxi cab. Later when he was next seen by police officers at the terminal, he did not have this black case with him. Furthermore, he drove a Buick automobile into the motel parking lot and parked it immediately in front of room 289, before retrieving the key to this room to enter. Within the room was the black suitcase, which Guiton had with him earlier at the terminal. From this evidence, a rational fact-finder could have concluded, as the jury did, that Guiton knowingly possessed the heroin in room 289. Accordingly, the jury's verdict of guilty should be upheld.