Dan Willies GUITON, Appellant,

v.

The STATE of Texas, Appellee.

No. 1154–84.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 16, 1987.

Edgar A. Mason, Izak Gregory, Dallas, for appellant.

Henry Wade, Dist. Atty., and Anne B. Wetherholt, Bob Phillips and Knox Fitz-

patrick, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

A jury found appellant guilty of the offense of unlawful possession of a controlled substance, heroin, with the intent to deliver. The court assessed punishment at sixteen years' confinement. The Dallas Court of Appeals reversed appellant's conviction after finding the evidence was insufficient first, to show that appellant was in exclusive possession of the motel room in which the heroin was found and second, to link affirmatively the appellant to the contraband sufficiently to show both knowledge of and control over the contraband. *Guiton v. State*, 679 S.W.2d 66 (Tex.App.—Dallas 1984).

The Court of Appeals gave an excellent summary of the evidence adduced at trial and we now quote therefrom:

"In the early morning hours of December 14, 1979, at approximately 6:00 o'clock, L.W. Walsh, working as a security officer at the Dallas—Ft. Worth Airport, discovered a pistol in a purse he was screening by the use of an x-ray machine. He immediately sounded an alarm that J.D. Harris of the Department of Public Safety at D/FW Airport answered. Harris took the purse and Mozelle LaMont, who claimed ownership of the purse, to his nearby office. LaMont was accompanied by a female named Jean Tucker. LaMont was arrested for carrying a prohibited weapon.

"Tucker was not taken into custody. LaMont told Harris that she was there to meet a friend named Dan coming from Los Angeles. She did not know his last name. Upon searching LaMont it was discovered that she had $1200 on her person. Harris had her criminal background checked and discovered that she had been 'handled' four times on dangerous drugs. Officer Virginia Davis placed Tucker under surveillance. She observed her meet the appellant, who was carrying a small black suitcase and a hang-up type bag, and after a short conversation, they separated with Tucker remaining at the airport and the appellant leaving in a taxi. Officer Davis furnished the cab number and name to J.G. Vineyard, a Detective Sergeant with the police at D/FW, who in turn contacted the cab company. About thirty minutes after the appellant left in the cab Officer Davis observed him return to the airport terminal, at which time he was only carrying the hang up bag. The appellant again met Tucker, and he and Tucker, along with a baby that she was carrying, left the terminal together. Officer Davis observed the appellant and Tucker, along with the child, get in a Cadillac and drive away. Davis immediately notified Vineyard and an Officer Pinkston, who was working patrol, and requested that Pinkston maintain surveillance until the Cadillac left the airport. Pinkston stopped the vehicle for improper change of lanes, but did not issue a citation and testified he really only wanted to get the identification of the appellant. He did not see any luggage in the vehicle.

"Officer Vineyard, after checking with the cab company, had gone to the La-Quinta Motor Inn, Irving, Texas. There he met Officer Christy of the Irving Police Department. Vineyard went to the registration desk and observed a registration card that showed Dan Guiton had registered and was assigned room 289. Vineyard and Christy obtained a key to the room next to room 289, went to the room, and set up a surveillance on room 289 and the parking area. It appears that about two hours later the appellant, Tucker, along with the child, arrived at the motor inn, driving a Buick. The officers described how the appellant drove slowly, circling the inn and parking at the far end of the parking area. The Buick remained there for two or three minutes, then the appellant drove down and parked near room 289. The appellant and Tucker, who was carrying the

child, got out of the car and immediately went upstairs to the door of room 289. Appellant reached up above the porch light and retrieved the room key. At this time Vineyard and Christy stepped out of the room next door. Vineyard said 'Hello, how is it going.' Appellant replied 'Fine, thank you.' Vineyard then asked if he had just come in from California. Appellant said that he had. Vineyard told him 'We are narcotics officers.' He also told him that he and Christy work drug smuggling. Vineyard testified that the appellant appeared to be nervous at this time. Vineyard then asked him 'if he had any drugs on him.' Appellant said no. Vineyard then asked if he could search him. Appellant said 'Go ahead.' Vineyard patted him down. Vineyard then asked him if he had any drugs in his room. Vineyard testified that he could not remember for sure what was said. The appellant either said 'No, go ahead and look,' or he said no, and then he was asked if·he could look around, to which he said go ahead. The appellant unlocked the door and the officer went in and searched the room. After an extensive search the officers found heroin concealed inside a chair cushion. There was no contraband found in 'plain view.'[1] In addition to the furnishings of the motor inn the only other thing found in the room was a suitcase. Vineyard described it as small, black, type suitcase which would fit under the seat on a plane. Appellant and Turner were both arrested. At trial, the appellant did not testify."

"[1] The dissent states 'According to the police officer, a large hump in the chair's cushion was obvious.' The officers did not testify to the above. Officer Vineyard, who found the contraband, testified 'It looked like a cushion with a giant lump in it.' He did not even testify if the lump was visible before the cushion was moved at the time of the search of the chair."

679 S.W.2d at 67–68.

The Court of Appeals noted that the court instructed the jury that they should consider the testimony of the witness Vineyard that he had seen the name Dan Guiton on a registration card at the motel not for the purpose of establishing the truth of such assertion but for the limited purpose of showing the motive for the witness Vineyard to place appellant under surveillance. Therefore, the Court of Appeals held that there was no evidence to show to whom room 289 had been rented. In addition the Court found that there was no evidence that the appellant had ever been in the room before nor was there any testimony that the suitcase found in the room was the same, or even similar to the suitcase carried by appellant at the airport.

The State argues in its petition for discretionary review that, viewing the evidence in the light most favorable to the verdict, the only reasonable hypothesis raised by the evidence is that appellant had the exclusive care, custody, control and management of the contraband and knew that the substance was indeed heroin. The State maintains that there is no other reasonable explanation for appellant's evasive and furtive conduct between the time he initially met Tucker at the airport and his arrival at the LaQuinta. Furthermore, the State argues that while there is no testimony in the record that the bag found in room 289 was the same bag carried by appellant when he arrived at DFW from Los Angeles, it is no small coincidence that the appellant arrived in Dallas carrying a small black bag, departed the airport in a cab while carrying the bag, was dropped off by the cabdriver at the LaQuinta, then returned to the airport minus the black bag. Furthermore, the State argues that appellant's actions in retrieving the key to room 289, his answers to the officer's questions, his consent to the officer's entry and search of the room, his action of unlocking the door to room 289 and giving the officers access to the room clearly show his control over the motel room. The State further argues that even if there is an outstanding reasonable hypothesis that someone else entered the room and put the heroin inside the chair cushion, the evidence is still sufficient to show that appellant had *joint* care, custody, control and management over the heroin because he *knew* the key to the room was on the porch light and he *knew* this to be *his* room. The

State asserts that appellant's knowledge that the heroin was in the room is evidenced by the repeated furtive and evasive actions he took between leaving the airport the first time in the taxi and finally arriving at the motel in the Buick.

"In order to establish the unlawful possession of a controlled substance the State must prove two elements: (1) that the accused exercised care, control and management over the contraband, and (2) that the accused knew that the matter possessed was contraband. *Pollan v. State*, 612 S.W.2d 594, Tex.Cr.App.; *Dubry v. State*, 582 S.W.2d 841, Tex.Cr. App. It is not necessary to prove that the accused had exclusive possession of the narcotics in question. *Damron v. State*, 570 S.W.2d 933, Tex.Cr.App. When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Wiersing v. State*, 571 S.W.2d 188, Tex.Cr.App.

"The affirmative link can be established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Norman v. State*, 588 S.W. 2d 340, Tex.Cr.App. Among such additional facts which can establish the affirmative link are: the marihuana was in open or plain view, *Hughes v. State*, 612 S.W.2d 581, Tex.Cr.App; the place where the contraband was found was enclosed, *Mendoza v. State*, 583 S.W.2d 396, Tex. Cr.App.; the narcotic was conveniently accessible to the accused, *Hahn v. State*, 502 S.W.2d 724, Tex.Cr.App.; the accused was the owner of the place where the contraband was found, *Moulden v. State*, 576 S.W.2d 817, Tex.Cr.App.; the accused was the driver of the automobile in which the contraband was found, *Aldridge v. State*, 482 S.W.2d 171, Tex.Cr. App.; and the contraband was found on the same side of the car seat as the accused was sitting, *Orosco v. State*, 164 Tex.Cr.R. 257, 298 S.W.2d 134." *Desh-*

*ong v. State*, 625 S.W.2d 327 at 329 (Tex. Cr.App.1981).

See also *Rhyne v. State*, 620 S.W.2d 599 (Tex.Cr.App.1981); *Guitierrez v. State*, 533 S.W.2d 14 (Tex.Cr.App.1976).

Assuming that the State is correct in its assertion that the evidence does show that appellant rented room 289, we are unable to say from the record before us that appellant was in exclusive possession of the motel room where the substance was found. *Naquin v. State*, 607 S.W.2d 583 (Tex.Cr.App.1980). It certainly appears that Jean Tucker had access to the room and it is very possible that others too knew that the room key could be found above the porch light. The fact that a defendant has rented the premises upon which narcotics are found, if also occupied by others, is not usually sufficient in and of itself to justify a finding of joint possession. *Rhyne v. State*, supra; *Wright v. State*, 500 S.W.2d 170 (Tex.Cr.App.1973). Thus we must look for additional independent facts and circumstances which affirmatively link the accused to the contraband. It is helpful to examine other cases where a similar question was presented.

In *Naquin v. State*, supra, a probation revocation case, officers obtained a warrant to search a house, a nearby garage and blue Monte Carlo for marihuana. During a short surveillance of the premises, officers observed Naquin working under the hood of a blue pickup truck which was parked halfway into an unattached garage near the address described in the warrant. Naquin was conversing with two other individuals. Six feet from where Naquin was standing was a blue Monte Carlo. The officers drove around the block and when they returned, the defendant and the other two individuals had left. Two officers began to search the garage, while three other officers entered the house and began a search there. One of the officers who remained outside removed a set of keys from the ignition of the truck and tried the keys on the trunk of the Monte Carlo. He was able to open the trunk and found 76 pounds of marihuana. Naquin was found hiding in the attic of the house. No direct evidence

was adduced showing that Naquin owned either the truck or the Monte Carlo although Naquin's probation officer testified that in the month preceding the offense Naquin told him that he was driving a "1976 blue Chevrolet sedan." This Court found that there was no evidence which would indicate Naquin's knowledge that the trunk of the Monte Carlo contained marihuana.

In *Wiersing v. State,* supra, the evidence showed that Wiersing was one of two passengers in the back seat of the car. During a search of the car, a baggie of marihuana was found sticking out from underneath the back of the front seat. The other passenger in the back seat of the car testified that the marihuana was hers and that Wiersing had no knowledge of the marihuana. Wiersing testified to the same affect. This Court found the evidence insufficient and reasoned as follows:

"... The record reflects that appellant did not own the car nor was he in exclusive possession of the car in which the marihuana was found. Neither was he the driver of the car. There is no evidence that appellant made any furtive gesture when the officer approached the car, or that appellant appeared to be nervous during this time. The record does not reflect that appellant or any of the passengers gave any conflicting stories, or that anyone made any suspicious or incriminating statements. There was no attempt by appellant or the other passengers to flee the scene. Officer Morrision testified that he did not smell the odor of marihuana on appellant's clothing, nor did he find any contraband on appellant when he searched him. There was no evidence that appellant appeared to be under the influence of any drug. *The record does not reflect that the baggie of marihuana was in plain view of appellant, since it was under the seat and only an inch of plastic protruded.* After a full search of the car, no more marihuana was found. *The marihuana was not found in appellant's actual possession.* The State did not attempt to disprove the ownership of the contraband by the driver or the third passenger.

*"Thus, the only evidence linking appellant to the contraband was his proximity in the car to the place where the marihuana was found...."* (emphasis added) 571 S.W.2d at 190–191.

A similar situation occurred in *Presswood v. State,* 548 S.W.2d 398 (Tex.Cr.App. 1977), where marihuana was found wrapped inside a bank bag inside the glove compartment of the automobile which Presswood was driving. Presswood was accompanied by another individual and there was no evidence presented at trial as to the ownership of the automobile. Nor was there evidence as to how long Presswood had been driving the automobile. Taking these factors into consideration, the Court reasoned that it was possible to assume that the marihuana had been possessed at some earlier point in time by another individual occupying the automobile.

In *Curtis v. State,* 519 S.W.2d 883 (Tex. Cr.App.1975), the evidence was found sufficient to support Curtis's conviction. Testimony indicated that when officers entered Curtis's apartment, Curtis and four other individuals were seated in a circle on the living room floor. Curtis's wife was asleep in the bedroom. Officers found marihuana in the living room, the kitchen and in the pocket of a sports jacket hanging in a closet in a bedroom. Also found in the bedroom were envelopes addressed to Curtis at a Fort Worth address, as well as envelopes addressed to his wife. This Court reasoned that the evidence was sufficient to link Curtis to the marihuana found in the sports jacket in the bedroom closet.

In the instant case, the State sought only to establish a relationship between appellant and the motel room. No further attempt was made to link appellant to the heroin. There is no evidence that the black suitcase found in the room was the same black suitcase carried by appellant at the airport. There is no evidence to show that the heroin was ever carried in the black suitcase. There is no evidence that appellant placed the heroin in the chair cushion.

There is nothing in the record that would even suggest that appellant knew that the cushion of the chair contained heroin. To convict an individual of a criminal offense, as was done in this case, simply because authorities have found contraband in the furnishings of a motel room which he has just rented and which obviously sees an immense amount of turnover among clientele, without some connection between the individual and the contraband would amount to a grave injustice. While the evidence strongly suggests that the appellant knew the heroin was located in the chair cushion in the hotel room, there is little, if any, evidence affirmatively linking the appellant to the heroin to such an extent that it may be inferred that he exercised care, custody, control, or management over the heroin. Had the contraband been found in a personal item in which ownership could have been attributed to appellant, as in *Curtis v. State, supra,* our decision would of course be different. But control of a motel room in and of itself is not synonymous with control of the contraband when the appellant does not have sole access.

■ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. *Dubry v. State,* 582 S.W.2d 841 (Tex.Cr.App.1979). While this case is a close one, we hold that the evidence creates only a strong suspicion of the appellant's guilt of the offense charged. Thus we agree with the Court of Appeals that the evidence is insufficient to sustain the conviction.

■ In cases where the evidence is insufficient to support a conviction, double jeopardy safeguards preclude further prosecution of the cause. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

Therefore, the judgment of the Court of Appeals is affirmed and the cause is remanded to the trial court to enter an order of acquittal.

WHITE, J., concurs in the result.