**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 91-1301**
_____

**RICHARD RAY GILLEY,**

**Petitioner-Appellee,**

**VERSUS**

**JAMES COLLINS, Director, Texas**
**Department of Criminal Justice,**
**Institutional Division,**

**Respondent-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

August 4, 1992

Before GOLDBERG, DUHÉ, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Richard Gilley having been granted habeas relief because there was insufficient evidence to support his state conviction for possession of marijuana, the sole issue before us "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt", as held in **Jackson v. Virginia**, 443 U.S. 307, 319 (1979) (emphasis in original). We **AFFIRM**.

I.

Near Huckabay, Texas, on August 26, 1986, while Texas

Department of Public Safety Pilot Billy Peace, Texas Ranger John Dendy, and Sheriff David Coffee conducted a search by helicopter for stolen vehicles, Peace noticed a marijuana patch, pointed it out, and circled the area. A man later identified as Jessey Gilley was seen running out of the patch and into the bushes toward two trailer houses.

The helicopter followed a pickup truck that left one of the trailers and landed near it. It was occupied by Jessey Gilley's wife and children. Peace observed smoke coming from the marijuana patch; and, when he and Dendy took the helicopter back up, they observed Jessey Gilley standing by the fire. He was arrested; 461 marijuana plants, seeds, fertilizer, tools, and farming, drip irrigation and spraying equipment were seized. Appellant Richard Gilley, Jessey's brother, was out of state at the time of Jessey's arrest, but turned himself in.

That October, Richard Gilley was charged with possession of more than five but less than 50 pounds of marijuana. And that next May, after he waived his right to a jury trial, the trial court found him guilty and sentenced him, *inter alia*, to fifteen years' imprisonment. A Texas court of appeals affirmed the conviction in an unpublished opinion.[1] Richard Gilley petitioned unsuccessfully

---

[1] The same court reviewed Richard's and Jessey's convictions. Jessey was convicted in a trial held separately and before Richard's, and the Texas appellate court issued two very similar opinions. For Richard's appeal, the initial opinion stated that "[t]he jury convicted Richard Ray Gilley". As noted, his trial was not before a jury. The opinion also quoted the testimony of a witness who testified at Jessey's, but not Richard's, trial.

Although these errors were corrected in a substituted opinion,

for discretionary review in the Texas Court of Criminal Appeals.

A 28 U.S.C. § 2254 federal habeas application was filed in 1989, raising one of the issues presented on direct appeal: insufficient evidence. Accordingly, the State agreed that he had exhausted state remedies. The magistrate-judge recommended that the application be dismissed for failure to exhaust state remedies, but in the alternative, that it be granted on the grounds of insufficient evidence. Both parties filed objections to that report. The district court, after a *de novo* review of the magistrate-judge's findings and recommendation and the parties' objections, adopted the report and dismissed the application for failure to exhaust. Both parties moved to amend the judgment, agreeing that state remedies had been exhausted. Pursuant to an amended opinion, the judgment was amended in February 1991 to state that state remedies had been exhausted, and habeas relief was granted based on insufficient evidence.[2]

---

they reflect the possible confusion over what evidence was considered in Richard Gilley's trial, as discussed in note 4, *infra*. As the federal district court stated, "[t]he trial court may have found additional facts connecting [Richard Gilley] to the marijuana in this or [an]other trial, if so, such findings have not been shared with this court." As discussed in note 4, while there may have been additional evidence against Richard in Jessey's trial or elsewhere, such evidence cannot be considered on appeal. Obviously, we may consider only evidence from Richard Gilley's trial, as contained in the record on appeal. *See, e.g.,* Fed. R. App. P. 10 (the record on appeal); **Jackson**, 443 U.S. at 324; **Guzman v. Lensing**, 934 F.2d 80, 82 (5th Cir. 1991).

[2] Throughout the proceedings in state and federal court, Richard Gilley remained free on bail.

II.

"Our standard of review in a habeas action alleging insufficient evidence is set out in *Jackson* ...."[3] *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991); *see* *Wright v. West*, 60 USLW 4639, 4641 (1992). The sole issue before us is whether, pursuant to *Jackson*, the evidence was sufficient to support Richard Gilley's conviction.

A.

As noted, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Guzman*, 934 F.2d at 82 (quoting *Jackson*, 443 U.S. at 319) (emphasis in *Jackson*). As discussed in note 1, *supra*, our consideration of the sufficiency of the evidence for Richard Gilley's conviction is, of course, limited to a review of the evidence presented at his trial and contained in the record on appeal.[4] *Id.*

---

[3] The *Jackson* standard applies to both bench and jury trials; *Jackson*, like this case, involved review of a bench trial. 443 U.S. at 309, 311 & n.3, 317 n.8 (it "is of no constitutional significance" whether the trier of fact is a judge or jury).

[4] At oral argument, the State asserted for the first time that we should consider evidence supposedly discussed at a pretrial hearing; and it described physical evidence supposedly found in Richard Gilley's trailer that would link him to the marijuana. However, the admission of that evidence at his trial does not appear in the record on appeal; and the alleged evidence is not mentioned in the briefs, the district court opinion, or the magistrate-judge's report. At oral argument, the State cited both a suppression hearing at which the trial court ruled against Richard Gilley, and the following colloquy from his trial in support of its claim that the alleged exhibits are a part of the record before us on appeal:

- 4 -

> MR. CARNEY: Your Honor, could we go ahead and open the ... pretrial exhibits so that I might have them already open and available and to use for examination?
>
> THE COURT: That's fine. For the record, there has already been a trial before a jury in this court with regard to ... The State of Texas vs. Jessey Ray Gilley, and I understand both the State and Defendant will be using exhibits from that ... proceeding, either the pretrial or trial ....

No authority need be cited for the rule that we generally decline to consider issues raised for the first time at oral argument. But, the State's assertion is not a new issue; the only issue is the sufficiency *vel non* of the evidence. Simply put, what is in the record is in the record. Obviously, the appellate process would have been greatly aided by the State making this assertion in its opening brief, so that Gilley could have responded in his. (The process was further impeded by the State not filing a reply brief, even though Gilley's brief repeatedly challenged the State's reading of the record.)

Turning to the merits of this most untimely assertion, the alleged exhibits referenced at oral argument for the first time are not part of the record on appeal in this case. As discussed in note 1, *supra*, this seeming confusion about what was in evidence at Richard Gilley's trial was the basis for the district court's stating the following:

> It is hoped the facts upon which this case is ultimately decided at the appellate level are the facts presented by the parties to the district court.
>
> [The State] urges, and the state courts have held, that [Richard Gilley] exercised care, custody, control, or management over the marijuana by his ownership of, and living on the land (each of which was joint with Jessey Gilley), his frequent comings and goings to the 118 acre tract, and the marijuana tract not being visible from either mobile home.
>
> *The trial court may have found additional facts connecting [Richard Gilley] to the marijuana in this or [an]other trial, if so, such findings have not been shared with this court.*
>
> The [Texas] Court of Appeals ... in its second

- 5 -

The State maintains that the magistrate-judge erred by engaging in a Texas state law reasonable hypothesis analysis, *e.g.*, **Humason v. State**, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987), and contends correctly that only the **Jackson** standard should have been applied. But, in fact, it appears that **Jackson** was the standard applied by both the magistrate-judge and district judge. In any event, as stated, "[o]nly **Jackson** need be satisfied, even if state law would impose a more demanding standard of proof." **Schrader v. Whitley**, 904 F.2d 282, 284 (5th Cir.), *cert. denied*, ___ U.S. ___, 111 S. Ct. 265 (1990); *see* **Jackson**, 443 U.S. at 326. "Under **Jackson**, we may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." **Gibson v. Collins**, 947 F.2d 780, 783 (5th Cir. 1991). Therefore, the question before us is whether any rational trier of fact could have found the essential elements of the crime

---

unpublished opinion at page 4 pithily opines the "mother hubbard" type phrase "... as well as the other facts and circumstances...." which suggest more factual findings but again this court is bereft of said other facts and circumstances.

[The State] ... offers no additional affirmative links[,] simply expounding the platitude that the marijuana was not far from where he lives; however, a minimum of two hundred yards through dense live oaks is twice the length of a football field which annually in the fall is found to be a long distance in many Texas towns on Friday night.

(Emphasis added.)

(possession of more than five but less than 50 pounds of marijuana) beyond a reasonable doubt.

B.

Under Texas law, "[i]n order to establish the unlawful possession of a controlled substance the State must prove two elements: (1) that the accused exercised care, control and [or] management over the contraband, and (2) that the accused knew that the matter possessed was contraband." *Guiton v. State*, 742 S.W.2d 5, 8 (Tex. Crim. App. 1987) (citations omitted). "`Possession' means actual care, custody, control or management." **Tex. Health & Safety Code Ann.** § 481.002(38) (West 1992) (Texas Controlled Substances Act). "[P]ossession must be a voluntary act." *Garcia v. State*, 790 S.W.2d 22, 24 (Tex. App.--San Antonio 1990, *rev. granted*). **Tex. Penal Code Ann.** § 6.01(b) (West 1974) provides: "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."[5]

It is not necessary to prove that the accused had exclusive possession of the contraband; however, "[w]hen [as here] the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively

---

[5] This definition applies to prosecution under the Texas Controlled Substances Act. *See* **Tex. Penal Code Ann.** § 1.03(B) (West 1974).

- 7 -

link the accused to the contraband." *Guiton*, 742 S.W.2d at 8. Needless to say, the State must present evidence of such additional facts and circumstances. *Id*. Circumstances relevant to establishing this affirmative link to the contraband include: (1) defendant's presence when the search warrant was executed; (2) contraband in plain view; (3) defendant's proximity to and the accessibility of the narcotic; (4) defendant under the influence of narcotics when arrested; (5) defendant's possession of other contraband when arrested; (6) defendant's incriminating statements when arrested; (7) defendant's attempted flight; (8) defendant's furtive gestures; (9) presence of odor of the contraband; (10) presence of other contraband or drug paraphernalia, not included in the charge; (11) defendant's ownership or right to possession of the place where the controlled substance was found; and (12) place where drugs found was enclosed. *Chavez v. State*, 769 S.W.2d 284, 288-89 (Tex. App.--Houston [1st Dist.] 1989, *review ref'd*) (citations omitted).

C.

Factual "findings made by the state court are entitled to a presumption of correctness in federal habeas proceedings." *King v. Collins*, 945 F.2d 867, 868 (5th Cir. 1991); *Smith v. Collins*, No. 91-2668, slip op. 5451, 5453 (5th Cir. June 30, 1992); 28 U.S.C. § 2254(d). We are not, however, "necessarily bound by ... [those] findings." *Sumner v. Mata*, 455 U.S. 591, 597-98 (1982).

> Section 2254(d) permits a federal court to conclude ... that a state finding was `not fairly supported by the record.' But the statute does require the federal courts to face up to any disagreement as to

the facts and to defer to the state court unless one of the factors listed in § 2254(d) is found.

*Id*. at 597-98 (quoting 28 U.S.C. § 2254(d)(8)).  Applying the § 2254 presumption of correctness to the state court's findings of fact does not conflict with the review mandated by **Jackson**.

> [A]s a general matter, **Jackson** follows the basic legal standard that in order to preserve the state factfinder's role a federal court must review the evidence in light most favorable to the prosecution.  Section 2254(d), on the other hand, provides guidance as to the extent a federal court should probe a state court's factfinding when ruling on habeas petitions.

**Chandler v. Richards**, 935 F.2d 915, 917 (7th Cir. 1991).

The State contends that the district court erred in holding that "a rational trier of fact could not have found beyond a reasonable doubt that ... [Richard] Gilley knew of the marijuana's existence, or exercised control over it."  It maintains that the following factors establish the requisite affirmative link between Richard Gilley and the marijuana:  (1) the proximity of his trailer to the marijuana patch; (2) "the size and sophistication of the Gilley marijuana farm"; and (3) his ownership of, and commutes to and from, the property where the marijuana patch was located.  Consistent with the appropriate standard of review under **Jackson** and § 2254, we review the district court's findings of fact under the Fed. R. Civ. P. 52(a) clearly erroneous standard.  *See, e.g.,* **Smith**, slip op. at 5453; **Guzman**, 934 F.2d at 82.

1.

Peace testified that a water well was located about 300 to 400 yards from the patch and that the "first trailer house [was] not

- 9 -

too awful far from the [well]." Sheriff Coffee testified that the closest trailer house was 75 to 100 yards from the patch, and that the pickup truck in which Jessey Gilley's family fled came from a second trailer house "a little further down [a dirt] road." Deputy McWhorter, who prepared the police report, testified that a gate was located fifty yards from the first trailer, that a metal shed (barn) was "approximately a hundred yards ... maybe further" beyond the gate, and that the patch was about 25 or 40 yards beyond the shed.

Based upon, *inter alia*, a review of Peace's testimony and photocopies of aerial photograph exhibits,[6] the district judge agreed with the finding by the magistrate-judge, and found, as quoted in note 4, *supra*, that the marijuana was "a minimum of two hundred yards through dense live oaks [from where Richard Gilley lived -- a distance which] is twice the length of a football field which annually in the fall is found to be a long distance in many Texas towns on Friday night."

This finding of fact by the district judge was not clearly erroneous. And, although the distance between the marijuana patch and the trailer is disputed, there is no dispute regarding the visibility of the patch -- not one person testified that it was visible from the trailers. Jerry Gordon, who lived near the property, testified that the area was "very thickly wooded, many draws, branches, and creeks running through it, it's a very rough

---

[6] On appeal, the State has substituted the actual photographs introduced at trial. Needless to say, they should have been provided earlier to the district court instead.

pasture." According to Peace, there was "no way" to see the patch from either of the trailers and it was not immediately visible "until you're looking down at it." Ranger Dendy testified that, using the dirt road on the property, one could enter the property, pass both trailers, pass the well house, circle around and exit without being anywhere near the patch. And, contrary to the State's reading of the record, that road did not run to the marijuana patch. Deputy Jackson testified that "[a]round the patch there was nothing but brush, you couldn't see very far outside the patch itself." Regardless of the distance between the trailers and the patch, the State failed to prove that it was visible from either of the trailers.

2.

The State asserts next that "the substantial expenditure of money and time, made in connection with the marijuana patch, situated close to the mobile home in which Richard Gilley and his family lived show that he not only knew about the marijuana, he planned to make a handsome profit from it." These assertions, however, are again wholly unsupported by the record. There was no evidence of the costs incurred in cultivating the marijuana, no evidence that Richard Gilley contributed to whatever costs were incurred, and no evidence that he expected to make a profit.

To show this sizeable, sophisticated marijuana operation and link Richard Gilley to it, the State points to the drip irrigation system; to pipe, supposedly used for it, that was stacked against both trailer homes; and to the barn, which contained tools and

supplies.  There was no evidence, however, linking Richard Gilley to the barn or the irrigation system.[7]  For example, along with the marijuana plants seized from the property, the State seized tools, valves, and farming, drip irrigation, and spraying equipment. Richard Gilley's fingerprints were not found on any of these items. As another example, and as noted, the State contends erroneously that the above referenced dirt road ran from the trailers to the patch.

### 3.

Richard Gilley was one of the owners of the property where the marijuana was found; however, as noted, this is not enough to prove the requisite "exercise of care, custody, control or management" over it.  *See, e.g., **United States v. Culpepper***, 834 F.2d 879, 882 (10th Cir. 1987) ("[T]he state of legal title to the fields ... [is] not germane to the question whether [one has] the power and ability to exercise dominion and control over the marijuana."). The State also introduced electric and telephone records and testimony from a neighbor that he observed Richard Gilley coming and going "on a daily basis" to prove that he lived on the property.  But, establishing an affirmative link between Richard Gilley and the property does not establish the requisite affirmative link between him and the marijuana.  As noted, the area

---

[7]    Richard Gilley arranged to have the water well drilled; and it was used, among other uses, to irrigate the marijuana.  The well contractor testified that Gilley "requested a unit that was big enough to serve two households."  There is no evidence that the well was anything more than "a four inch domestic water well" with a standard eighty gallon pressure tank.  And, there is no evidence linking the irrigation use to Richard Gilley.

was extremely dense with woods and underbrush.  As also noted, the State's witness, Ranger Dendy, testified that one could enter the property, pass both trailers, pass the well house, circle around and exit without being near the marijuana patch.

### III.

An affirmative link between Richard Gilley and the marijuana is a requisite element for the charge of possession when, as here, the accused is not in exclusive possession of the place where the contraband is found.  On this record, this is the missing link.  And, without this link, no rational trier of fact could have found possession beyond a reasonable doubt.  In sum, and viewing the evidence in the light most favorable to the prosecution, the State has shown that Richard Gilley co-owned property that was extremely brushy and densely wooded, that he commuted to and from it, that he contracted to have a well built, and that a marijuana patch existed on this property which could not be seen from the trailers or the road leading to and from them.  But, *inter alia*, the record does not contain sufficient evidence for any rational trier of fact to find, beyond a reasonable doubt, that Gilley exercised care, custody, control or management over that marijuana.  Therefore, the judgment granting habeas relief is

**AFFIRMED.**