NO. 07-03-0037-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 23, 2004

_____


HENRY PETE, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE CRIMINAL DISTRICT COURT OF JEFFERSON COUNTY;

NO. 85631; HONORABLE LARRY GIST, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

A jury found appellant Henry Pete, Jr. guilty of possession of a controlled substance following his plea of not guilty to that charge. Upon appellant's true plea to the enhancement paragraph included in the indictment, the trial court found him to be a repeat felony offender and assessed as punishment ten years confinement. Asserting one issue, appellant claims the evidence is legally and factually insufficient to support the conviction. We affirm.

Shawna Lawrence had known appellant about two months when he picked her up from school on September 13, 2001. He then picked up an individual, whom Shawna did not know, named Clarence. After riding around town for a while, Clarence asked appellant to "take [him] over here so [he] could handle something." When they arrived at an apartment complex, Clarence and appellant got out of the car and approached a number of people congregated on the porch of one of the apartments. Although appellant and Clarence remained outside on the porch, one of the other individuals "was going in and out of the apartment." After approximately ten minutes, Clarence and appellant returned to the car. Clarence opened the back door, placed a white plastic grocery sack in the arm rest between the two back seats, flipped the arm rest up, and got into the front passenger seat next to Shawna. Though she did not look inside it, and neither Clarence nor appellant volunteered the contents, Shawna believed, based upon its appearance and where Clarence placed it in the car, that the sack contained drugs of some kind.

After the trio drove around town a little while longer, Clarence asked appellant to make another stop. Appellant complied with the request, stopping this time at a house where two individuals unknown to Shawna were standing. Clarence retrieved the grocery sack from the back seat, and he, appellant, and the other two individuals gathered at the back of appellant's car. Shawna rolled down the window and asked appellant if she could use the restroom. Appellant secured permission from one of the individuals for Shawna to use the restroom in the house, and she went inside. Upon returning to the car, Shawna observed that one of the individuals standing with Clarence and appellant was smoking a

cigarette that had the "one of a kind smell" of P.C.P. She also noticed the grocery sack was sitting on top of the car trunk. It then occurred to Shawna that "there had to be some type of form of exchanging drugs" because "they do what is called testing it which means that if you have someone that's selling it to you and 9 times out of 10 if they smoke it, they're going to let you test one to see if you want to buy one." Shawna got back into the car, waited a few minutes, then rolled the window down and asked appellant to take her home. Clarence and appellant got back in the car, and Clarence began driving in the direction of Shawna's home.

Trish Molfino, a Jefferson County Deputy Sheriff, was on patrol on the night of September 13, 2001, when she received a radio dispatch regarding a maroon four-door Lincoln occupied by two black males. According to James Culbertson, the individual who called police about the Lincoln, the two black males in the car had just sold drugs to his son. Molfino, who was familiar with the car and its driver, located the Lincoln in the area identified by Culbertson and initiated a traffic stop. Molfino explained to appellant, Shawna, and Clarence the reason for the stop and asked appellant if he would consent to have his car searched. When appellant agreed, Molfino asked the three to step out of the car, and she handcuffed each of them for officer safety. Molfino then retrieved the drug dog from her patrol car and had the dog search the interior of the car. According to Molfino, the dog alerted on the passenger and driver sides of the front and back seats. In particular, the dog "kept hitting" on the armrest in the backseat. When she pulled the armrest down, she discovered a white plastic grocery sack. Inside the sack, Molfino

3

discovered a vanilla bottle containing some type of liquid and ten small clear vials. Molfino detected a very strong odor "kind of like formaldehyde" emitting from the bottles. Based upon her experience conducting drug interdiction, she immediately believed the liquid inside the bottles was P.C.P. Molfino further concluded, from the sheer number of individual vials she recovered from the car, that they were being held for "distribution purposes." Later, upon testing the liquid, chemists at the Jefferson County Regional Crime Lab confirmed it contained phencyclidine, or P.C.P., and had a combined weight of 4.1 grams. After placing appellant, Clarence, and Shawna[1] under arrest, Molfino and a back-up officer, who arrived shortly after Molfino searched the car, transported them to the police station for booking. At the station, officers discovered $396.16 in appellant's possession.

By his sole issue, appellant maintains the evidence is legally and factually insufficient to support the conviction. Specifically, he asserts "there was absolutely no evidence that [he] had actual care, custody, control, or management of or was aware of the existence of the contraband." We disagree. In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789,

---

[1]Shawna was arrested for outstanding warrants, not for the drug offense. Rather, Clarence and appellant were the only individuals charged with possessing the controlled substances located in the car.

4

61 L.Ed.2d 560, 573 ( 1979).  The standard is the same for both direct and circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex.Cr.App. 1995).  In our review, we do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of the witnesses, as this was the function of the trier of fact.  *See* Adelman v. State, 828 S.W.2d 418, 421 (Tex.Cr.App. 1992).  Rather, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict.  *Id*. at 422.  In so doing, any inconsistencies in the evidence are resolved in favor of the verdict.  Matson v. State, 819 S.W.2d 839, 843 (Tex.Cr.App. 1991).

In reviewing a factual sufficiency challenge, we view all of the evidence in a neutral light, both for and against the verdict, to determine whether it demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000).  We review the evidence supporting a disputed fact and compare it to evidence tending to disprove that fact.  *Id*. at 7.  In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must avoid substituting our judgment for that of the fact finder.  *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997).  Thus, we will set aside a verdict only where the evidence supporting guilt is so obviously weak or the contrary evidence so overwhelmingly outweighs the supporting evidence as to render the conviction clearly wrong and manifestly unjust.  Ortiz v. State, 93 S.W.3d 79,

5

87 (Tex.Cr.App. 2002), *cert. denied*, ___ U.S. ___, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003).

Before applying the sufficiency standards discussed above, we must first discern the elements of the offense the State was required to prove in this case beyond a reasonable doubt. To that end, we note that a person commits the offense of possession of phencyclidine if he intentionally or knowingly possesses the controlled substance. Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). To support a conviction for unlawful possession of a controlled substance, the State must prove that the accused: (1) exercised actual care, custody, control, and management over the contraband; and (2) knew the substance he possessed was contraband. *See* Brown v. State, 911 S.W.2d 744, 747 (Tex.Cr.App. 1995). By either direct or circumstantial evidence, the State must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id*. When the accused is not in exclusive possession or control of the place where the contraband is found, the State must prove independent facts and circumstances affirmatively linking him to the contraband. Guiton v. State, 742 S.W.2d 5, 8 (Tex.Cr.App. 1987). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *See Brown*, 911 S.W.2d at 747. Affirmative links may include: (1) the accused's presence when the contraband was found; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband

6

when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) the amount of contraband found; (14) whether the accused was the driver of the automobile in which the contraband was found; and (15) whether the accused possessed a large amount of cash. *See* Taylor v. State. 106 S.W.3d 827, 832 (Tex.App.–Dallas 2003, no pet.); *see also* Trejo v. State, 766 S.W.2d 381, 384 (Tex.App.-Austin 1989, no pet.). It is the logical force of the factors individually or combined that determines whether the State's evidence links the accused to the contraband. *Trejo,* 766 S.W.2d at 385.

The evidence in this case establishes affirmative links that raise reasonable inferences of appellant's knowledge and control of the P.C.P. First, appellant was present when the drugs were found. Second, the drugs were located in close proximity and were accessible to him. Third, the contraband emitted a strong, very distinctive odor. Fourth, while appellant did not own the car he was driving, his father testified at trial that, on the day of the offense, appellant was the only one who used it. Fifth, Molfino located the drugs in an enclosed area–the armrest between the two back seats of the car. Sixth, the large quantity of drugs made it unlikely that its presence was accidental. Seventh, appellant was

the driver of the car in which the drugs were found. Finally, appellant possessed a large quantity of cash when he was arrested.

Notwithstanding the affirmative links establishing his possession of the contraband as a principal actor, appellant maintains that the evidence establishes it was Clarence, not he, who possessed the P.C.P. To that end, appellant suggests Shawna "never stated that the contraband belonged to [him]." Neither did appellant touch the plastic sack nor look inside to examine its contents. Furthermore, the record reveals Clarence pleaded guilty to, and was convicted of, possession of the controlled substance in this case. However, the fact that Clarence accepted responsibility for possessing the P.C.P. does not absolve appellant of his culpability as a party to the offense. Indeed, a person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02 (Vernon 2003). The evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages the commission of the offense by words or other agreement. Burdine v. State, 719 S.W.2d 309, 315 (Tex.Cr.App. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). In making that determination, the court may examine the events before, during, and after the commission of the offense and rely on actions of the defendant, which show an understanding and common design to commit the offense. *Id*. Participation in an offense may be inferred from the circumstances. *See* Beardsley v. State, 738 S.W.2d 681,

8

684 (Tex.Cr.App. 1987). Finally, although mere presence at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt that may be combined with other facts to show appellant was a participant. *Id*. at 685.

Here, a rational jury could have reasonably deduced that appellant was as conscious as Shawna of the nature of Clarence's activities. *Cf. Trejo*, 766 S.W.2d at 385 (the odor of freshly burnt marijuana, coupled with the presence of seeds and rolling papers on the front seat must have apprized the accused of the existence of marijuana in the car, even though none was in plain view). Indeed, the record reveals appellant, on the night of the offense, came into frequent close contact with the plastic sack containing the contraband. For instance, Shawna observed appellant standing at the back of the car with Clarence and the other individuals when the sack was sitting on the trunk. At the same time, she also noticed that appellant was standing near a person who was smoking a cigarette that smelled strongly of P.C.P.–an odor that, by all accounts, is unlikely to be ignored. Appellant's willingness, then, not only to transport Clarence to the locations where he first obtained and, later, delivered the P.C.P., but also, to accompany him during those transactions lends credence to the State's contention that, at a minimum, appellant acted as a party to the offense. Thus, assuming *arguendo*, that the evidence was not sufficient to establish appellant was a principal actor in the commission of the offense, a rational jury reasonably could have inferred from the circumstances that his actions, in cooperation with Clarence's, showed that he knew of the P.C.P. and that he exercised care, control, and

management of it. *See* Vargas v. State, 883 S.W.3d 256, 263 (Tex.App.–Corpus Christi 1994, pet. ref'd).

Viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant committed the offense of possession of a controlled substance on September 13, 2001. We further conclude that the evidence is not so weak that the jury's verdict was clearly wrong and unjust, nor is the verdict so against the overwhelming weight of the evidence as to be clearly wrong and unjust. In short, the evidence is legally and factually sufficient to support appellant's conviction. Appellant's sole issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.