COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

ROY LEE
SEARS,                                                )                      No. 
08-01-00010-CR

                                                                              )

Appellant,                          )                               Appeal from

                                                                              )     

v.                                                                           )                 Criminal District Court No. 2

                                                                              )

THE STATE OF TEXAS,                                     )                      of Dallas County, Texas

                                                                              )

Appellee.                           )                         (TC# F-9931228-TI)

 

O
P I N I O N

 

Roy
Lee Sears appeals his conviction for unlawful possession of
methamphetamine.  Following a bench
trial, the court assessed punishment in the institutional division of the Texas
Department of Criminal Justice for ten years and a fine of $1,000.  On appeal, Appellant contends first, that the
trial court erred when it failed to require the State to identify its
confidential informant, and second, that the evidence is legally and factually
insufficient to support his conviction. 
We affirm.

FACTUAL SUMMARY








J.R.
Hayen, a police officer for the City of Irving,
executed a narcotics search and arrest warrant at the residence of Appellant
and his wife on February 24, 1999.  As an
undercover officer, Hayen had been investigating the
couple for various complaints about drug dealing.  Around December 21, 1998, he went to the Searses=
residence with an informant and met with Appellant.  During this meeting, Appellant took a small
bag of methamphetamine out of his pocket, showed Officer Hayen
how it melted down, and asked him to shoot up some methamphetamine before he
made his purchase.  Appellant told Hayen he would not sell to him unless he used some of the
methamphetamine.  Appellant sold a
quantity of methamphetamine to the informant.

On
February 19, 1999, Hayen retrieved some garbage bags
from the curb in front of the Searses= residence.  Hayen picked up one
bag and found a number of receipts from a store called the AGas Pipe,@
which sells cutting agents commonly used to cut methamphetamine.  The receipts listed a number of purchases of
cutting agents and baggies in different sizes. 
He also found some packaging and baggies used to package drugs,
including methamphetamine.  There was an
insurance paper in both of the Searses= names, as well as an empty bottle of
Superior N cutting agent.  Hayen identified two telephone lists and recognized a few
of the names as people whom he had investigated.  

On
February 23, 1999, Hayen took another trash bag from
the residence.  This bag contained five 1
cc syringes, papers in Appellant=s
name, and a small plastic baggie with a white powder residue.  Three of the syringes had a small amount of
liquid which field-tested positive for methamphetamine.  The white powder residue in the plastic
baggie also tested positive for methamphetamine.








After
Officer Hayen searched the trash bag on February 23,
he obtained a narcotics search and arrest warrant for the residence.  When Hayen arrived
on the February 24, Appellant and his wife were at home.  A tactical team entered, secured the
residence, and Hayen entered afterwards.  Appellant came out of the bathroom with a
tactical officer.  Mrs. Sears came out of
a back bedroom with another tactical officer. 
The Searses were taken outside and Hayen and the narcotics officers conducted the search.

Officer
Hayen saw a set of scales in plain view on the
kitchen table.  Next to the scales was a
black nylon-type sock.  Inside of the
sock was a box, a syringe, and two empty baggies.  Inside of the box was a baggie which
contained a powdery substance Hayen believed to be
methamphetamine.  Hayen
also retrieved a syringe from a top dresser drawer sitting behind the
kitchen.  The syringe contained a brown
liquid, which Hayen believed to be methamphetamine.  Officers also found several bottles of
Superior N, some of which were used and some that were empty.  There were also a number of baggies of
various sizes and shapes.  Some of these
contained residue.  A large number of
syringes were also found.  There was
paperwork throughout the residence in both of the Searses= names. 
Several spoons with some type of residue and a loaded .38 caliber Taurus
revolver were also found.  After the
house was searched, the Searses were placed under
arrest for possession of methamphetamine and taken to jail in Irving.  The laboratory results revealed that the contents of the baggies and the syringes was methamphetamine
with a total aggregate weight of 1.44 grams, including any adulterants or dilutants.








At
trial, Officer Hayen described the dresser drawer
which contained a syringe with a brown liquid, as well as some pens, cassette
tapes, baggies, and a box of business cards featuring Appellant=s name. 
The dresser drawer was found behind the kitchen, not in one of the
bedrooms.  On cross-examination, Hayen was presented with some papers that were not seized
by the officers.  Defense counsel
represented that the documents were found in areas of the home that had been
searched by the police on February 24. 
Some of the documents were envelopes addressed to ALee R. Sears,@ 
AR. Lee
Sears,@ and ARoy Lee Sears,@
names which Appellant=s
son used.  Hayen
admitted that there might have been another person living at the residence
besides Appellant and his wife.  He
mentioned a third unidentified person who had approached the house during the
raid, but acknowledged that he had not informed the district attorney of this
person=s
presence.

Officer
William Bishop of the Irving Police Department assisted Officer Hayen during the search. 
Bishop saw a bottle in plain view on the headboard of the bed in the
master bedroom.  The bottle was sitting
next to some prescription pill bottles with labels bearing Appellant=s and Mrs. Sears= names. 
Bishop knew that one of the Searses= sons resided in the house.

Investigator
Ricky Sipes also assisted with the search.  In a desk in the living room, he discovered a
syringe containing liquid.  Officer
Raymond Jones searched the master bedroom and found a couple of plastic baggies
containing a white powdery substance and some spoons with a white powdery
residue.  He also found what is known as Acut,@
a product white in color that is used to add to either methamphetamine or cocaine
to increase the weight.  He also
discovered bottles in the closet.

Sargeant Mark Michniacki was part
of the entry team.  He encountered
Appellant in the bathroom and Mrs. Sears in the bedroom.  Appellant was sitting on the toilet and right
next to him, within arm=s
reach, was a loaded steel revolver. 
Appellant mentioned that the gun belonged to him and that someone had
threatened him recently.  He told an
officer that he had the gun for protection. 

Officer
Hayen was asked on cross-examination if he knew that
the Searses had talked to some Irving police officers
on the day of the February arrest about being confidential informants for the
Irving Police Department.  Hayen said he did not know of a conversation that day, but
he acknowledged that Appellant had worked as an informant before, but he was
not sure to whom he was assigned.








Appellant
testified that he was in the coin business and used baggies for storing the
coins.  He met Billy Windell
Smith over twenty years ago.  In December
1998, Smith contacted Appellant about borrowing some money.  He arrived at Appellant=s house with two other men.  One of these men had a telephone bill and
began telling Appellant that someone had stolen his wife=s
identification.  The man believed
Appellant knew the perpetrator and he wanted Appellant to get in touch with
him.  He also asked Appellant if he could
borrow $1,600.  When Appellant refused to
loan him the money, the man offered collateral. 
At that point, the man opened a bag. 
Inside the bag was a shaving kit containing bags resembling sandwich
bags with a white powdery substance inside. 
The man said the bag contained drugs. 
Appellant became upset, pulled a knife on the men, and told them to get
out of the house.  They left something
behind and Appellant picked it up and put it outside.  The next day Smith called and told Appellant
he had left something and wanted to pick it up. 
Appellant told Smith to come and get it. 
Smith arrived at the house with another individual who had not been
there the day before.  Smith said that
this individual wanted to Abuy@ the items.  Appellant asked them to leave and directed
them to the items, but they left without taking them.  Appellant began to suspect that Smith was
trying to set him up, so he threw the items in a dumpster behind his
house.   

A
few months later, Smith brought his girlfriend to Appellant=s home. 
The couple was in the house for about an hour and went into various
rooms during their visit.  The police
arrived with a search warrant five or ten minutes after Smith left.  Appellant claimed that Smith was responsible
for planting the drugs that were found in his home on February 24.  He did not believe the drugs belonged to his son.  The State impeached Appellant with his prior
convictions and time served for possession of a controlled substance, illegal
investment, and forgery.  








Mrs.
Sears testified that she and Appellant bought and sold coins for a living.  Appellant=s
son lived in their home and his room was the one in which the police found
drugs.  Mrs. Sears was present when Billy
Windell Smith arrived in December and she discovered
some large bags with a powdery substance in the house after he left.  She also testified that Smith arrived at her
home with a woman on the day of the search. 
Smith and his companion sat in the living room, but had access to other
parts of the house during their visit, including the bathroom.  The police arrived five or ten minutes after
Smith and his companion left.  Mrs. Sears
denied owning or possessing illicit drugs on the date of the search.  She also denied that her husband possessed or
dealt drugs.  

Appellant
was charged by indictment for unlawfully, knowingly, and intentionally
possessing the controlled substance methamphetamine in an amount of one gram or
more but less than four grams.  After
hearing the evidence, the trial court found Appellant guilty.  Mrs. Sears was found not guilty.  This appeal follows.

IDENTITY OF CONFIDENTIAL INFORMANT

In
his first point of error, Appellant argues that the trial court erred by not
requiring the State to identify its informant. 
He contends that the crux of his defense was that Billy Windell Smith was an informant who planted the drugs in
Appellant=s home in
order to Awork off
a case@ and that
his defense was impaired because the State did not acknowledge that Smith was
the informant.  Consequently, he claims
the State withheld exculpatory information that only it could provide and
denied Appellant the right to a fair trial.








During
opening statement at trial, defense counsel maintained that Billy Windell Smith was the confidential informant who arrived at
the Searses=
home with Officer Hayen on the evening of February
24.  He also alleged that Smith planted
the objects in the Searses=
garbage.  The court then directed the
State to provide Smith=s
address so that the defense might subpoena him. 
Smith was located by defense counsel and subpoenaed, but he was never
called as a witness.

Rule
508 of the Texas Rules of Evidence provides that the State has a privilege to
refuse to divulge the identity of a person who has furnished information
relating to or assisting in an investigation of a possible violation of a
law.  Tex.R.Evid. 508(a).  This
privilege is not absolute and subsection (c) of Rule 508 creates an exception
that permits a court to require the disclosure of the informant=s identity when it appears that an
informant can give testimony necessary to a fair determination of the defendant=s guilt or innocence.  Tex.R.Evid. 508(c)(2).  A defendant is only required to make a
plausible showing that the informant could give testimony necessary to a fair
determination of guilt.  Anderson v.
State, 817 S.W.2d 69 (Tex.Crim.App. 1991), citing
Bodin v. State, 807 S.W.2d 313, 318 (Tex.Crim.App. 1991). 
AThe
informer=s
potential testimony must significantly aid the defendant and mere
conjecture or supposition about possible relevancy is insufficient.@ 
[Emphasis added].  Bodin,
807 S.W.2d at 318.  The defendant
has the threshold burden of demonstrating that an informant=s identity must be disclosed.  Rugendorf
v. United States, 376 U.S. 528, 84 S.Ct. 825, 11
L.Ed.2d 887, rehearing denied, 377 U.S. 940, 84 S.Ct.
1330, 12 L.Ed.2d 303 (1964).








Whether
or not Appellant can meet the threshold burden of demonstrating that the
informant=s
identity would significantly aid his defense, it is far from clear that such a
showing would make any difference in the outcome of this case and thus
Appellant has not established that the court=s
ruling caused him any harm.  Rule 44.2(b)
requires that any Aerror,
defect, irregularity, or variance that does not affect substantial rights must
be disregarded.@  Tex.R.App.P. 44.2(b).  If we were
to conclude that the trial court erred by not requiring the State to reveal the
name of the confidential informant, this would have no practical effect.  During trial, Appellant insisted that Smith
was the confidential informant, subpoenaed Smith and questioned him, but did
not call him as a witness.  If Appellant
is certain that Smith was the confidential informant--and he does not
claim that the confidential informant was anyone other than Smith--he has
already obtained the relief he now seeks on appeal; he was provided the alleged
informant=s address
by the State but failed to call him to the stand.  The fact finder chose to disbelieve Appellant=s assertions that Smith planted the
drugs and that he, Appellant, was not aware that the drugs were in his
home.  Point of Error
No. One is overruled.

POSSESSION OF A CONTROLLED SUBSTANCE

In
Points of Error Two and Three, Appellant challenges the legal and factual
sufficiency of the evidence to support his conviction for possession of
methamphetamine.

Standards of Review








In
determining the legal sufficiency of the evidence used to support a criminal conviction,
appellate courts view the evidence in the light most favorable to the verdict
and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560, 573 (1979); Geesa
v. State, 820 S.W.2d 154, 156-57 (Tex.Crim.App.
1991), overruled on other grounds, Paulson v. State, 28 S.W.3d
570 (Tex.Crim.App. 2000); Hernandez v. State,
946 S.W.2d 108, 110-11 (Tex.App.--El Paso 1997, no
pet.).  We do not resolve
conflicts of fact or assign credibility to witnesses, as it is the function of
the trier of fact to accept or reject any, part, or
all of any witness=s
testimony.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Lucero v. State, 915 S.W.2d
612, 614 (Tex.App.--El Paso 1996, pet. ref=d).  An appellate court determines only if the
explicit and implicit findings of the trier of fact
are rational by viewing all the evidence in a light most favorable to the
verdict.  See Lucero, 915 S.W.2d at 614. 
Any inconsistencies in the evidence are resolved in favor of the
verdict.  Id.  If the appellate court sustains a legal
sufficiency challenge, it must render a judgment of acquittal.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).

In
reviewing the factual sufficiency of the evidence to support a conviction,
appellate courts view all the evidence in a neutral light, favoring neither
party.  Johnson v.
State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis, 922 S.W.2d at 129.  Evidence is factually insufficient if it is
so weak that it would be clearly wrong and manifestly unjust to allow the
verdict to stand, or the finding of guilt is against the great weight of the
available evidence.  Johnson, 23 S.W.3d at 11. 
Therefore, we must consider whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the fact finder=s determination or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  See id.  In performing this review, appellate courts
are to give due deference to the fact finder=s
determinations.  See id. at 8-9; Clewis, 922 S.W.2d
at 136.  The fact finder is the judge of
the credibility of the witnesses and may Abelieve
all, some, or none of the testimony.@  Chambers v. State,
805 S.W.2d 459, 461 (Tex.Crim.App. 1991).  Consequently, a reviewing court may find the
evidence factually insufficient only where necessary to prevent a manifest
injustice from occurring.  See Johnson,
23 S.W.3d at 9,12; Cain v. State, 958 S.W.2d
404, 407 (Tex.Crim.App. 1997).

Legal Sufficiency








In Point of Error No. Two, Appellant claims that the
evidence was legally insufficient to support his conviction because a rational
juror would have a reasonable doubt as to whether Appellant=s son left the drugs in Appellant=s house or whether Billy Windell Smith planted them there.  Appellant argues that the evidence
establishes that he was not aware the drugs were in his home.

To
support a conviction for unlawful possession, the State must prove that the
accused (1) exercised care, control, and management over the contraband, and
(2) knew the matter possessed was contraband. 
See Martin v. State, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988); Davila v. State, 930 S.W.2d
641, 644-45 (Tex.App.--El Paso 1996, pet. ref=d).  AA
person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.@  Tex.Pen.Code
Ann. ' 6.03(b)(Vernon 1994).  An
affirmative link must be established between the accused and the contraband
demonstrating both that the accused had control over it and had knowledge of
its existence and character.  See Brown v. State, 911 S.W.2d 744 (Tex.Crim.App.
1995); Menchaca v. State, 901 S.W.2d
640, 651 (Tex.App.--El Paso, 1995, pet. ref=d).  The affirmative link must raise a reasonable
inference that the accused knew of and controlled the contraband.  Christian v. State,
686 S.W.2d 930, 932 (Tex.Crim.App. 1985); Levario v. State, 964 S.W.2d 290, 294 (Tex.App.--El Paso 1997, no pet.).  This affirmative link may be shown by either
direct or circumstantial evidence, and Ait
must establish, to the requisite level of confidence, that the accused=s connection with the drug was more
than just fortuitous.@  Brown, 911 S.W.2d at
747.








Mere
presence at the scene is not sufficient to establish unlawful possession of a
controlled substance, but evidence which affirmatively links the defendant to
the controlled substance will suffice to prove that he possessed it
knowingly.  McGoldrick v. State,
682 S.W.2d 573, 578-79 (Tex.Crim.App. 1985).  When an accused is not in exclusive
possession of the place where the contraband is found, additional independent
facts and circumstances must be presented that affirmatively link the accused
to the contraband.  Menchaca,
901 S.W.2d at 651. 
Factors that may provide this affirmative link include:

$ the
contraband was conveniently accessible to the accused [Guiton
v. State, 679 S.W.2d 66, 69 (Tex.App.--Dallas
1984), aff=d,
742 S.W.2d 5, 8 (Tex.Crim.App. 1987)];

 

$ the accused
was the owner of the place where the contraband was found [Guiton,
742 S.W.2d at 8; Isaacs v. State, 770 S.W.2d 76, 79 (Tex.App.--El
Paso 1989, pet. ref=d)];

 

$ other drugs
and drug paraphernalia not included in the charge were present [Earvin v. State, 632 S.W.2d 920, 925 (Tex.App.--Dallas 1982, pet. ref=d)];

 

$ the accused
had cash and weapons [King v. State, 710 S.W.2d 110, 113 (Tex.App.--Houston [14th Dist.] 1986, pet. ref=d), cert. denied, 484 U.S. 829,
108 S.Ct. 99, 98 L.Ed.2d 59 (1987)]; and

 

$ the accused=s name appeared on receipts, envelopes,
and other documents found in the premises [Herrera v. State, 561 S.W.2d
175, 179 (Tex.Crim.App. 1978); Goodall
v. State, 774 S.W.2d 821 (Tex.App.--Fort Worth
1989, pet. ref=d)].

 

See Edwards v. State, 813 S.W.2d 572, 583 (Tex.App.--Dallas 1991, pet. ref=d).  One factor alone does not support a finding
of an affirmative link.  Herndon v. State, 787 S.W.2d 408, 409 (Tex.Crim.App.
1990).  The number of factors
present is less important than the logical force the factors have alone or in
combination in establishing the elements of the offense.  Whitworth v.
State, 808 S.W.2d 566, 569 (Tex.App.--Austin
1991, pet. ref=d).








The
record here reveals sufficient evidence establishing that Appellant knowingly
possessed methamphetamine.  When officers
arrived with a search warrant, Appellant and his wife were at home.  Because Appellant was not in exclusive
possession of the house, the State had to present additional facts to establish
an affirmative link between Appellant and the contraband.  The officers found a significant amount of
drug paraphernalia throughout the house and in plain view of Appellant.  Evidence of methamphetamine was also found in
several rooms of the house.  Officer Hayen saw a set of scales on the kitchen table.  Next to the scales was a sock that contained
a box, a syringe, and two empty baggies. 
Inside of this box was a baggie which contained a powdery substance Hayen believed to be methamphetamine. He also retrieved a
syringe from the top dresser drawer sitting behind the kitchen.  Hayen believed a
brown liquid in the syringe was methamphetamine.  The dresser drawer also contained some pens,
cassette tapes, baggies, and a box of business cards featuring Appellant=s name. 
Officer Bishop searched a desk in the living room and discovered a
syringe with liquid in it.  Officer Jones
searched a bedroom and discovered a couple of plastic baggies that contained a
white powdery substance and some spoons that contained a white powdery
residue.  He also found some Acut,@
a product white in color that is used to add to either methamphetamine or
cocaine to increase the weight. 
Appellant was found in the bathroom with a loaded gun within arm=s reach.  Based on this evidence, a rational trier of fact could find, beyond a reasonable doubt, that
Appellant exercised care, control and management over the contraband, and that
he knew the substance possessed was contraband. 
In conducting a legal sufficiency review, we do not consider Appellant=s countervailing theory that the drugs
belonged to his son or that Billy Windell Smith
planted them.  Because the evidence is
legally sufficient, we overrule Point of Error No. Two.

Factual Sufficiency








In Point of Error No. Three, Appellant argues that the
evidence is factually insufficient to support his conviction because the
evidence establishes that either his son left the drugs in the house or Billy Windell Smith planted them there.  The officers at the scene observed drug
paraphernalia in several rooms.  Officers
Hayen and Bishop knew or suspected that another
person lived in the home besides Appellant and his wife.  Defense counsel presented documents in an
attempt to show that they were addressed to Appellant=s
son who also used the name ARoy@ or ALee.@ 
Mrs. Sears testified that the room where the drugs were found belonged
to the son.  There was evidence that a
third person approached the house during the search but no evidence was
introduced as to that person=s
identity.  Moreover, the syringes
containing a liquid and the baggies with the powdery substance, all of which
tested positive for methamphetamine, were not only found in the son=s bedroom.  One baggie was found in the kitchen, while a
syringe was found in a dresser in a room behind the kitchen.  More baggies were found by Officer Jones in
what he described as the Amaster
bedroom.@  Most importantly, while Appellant argues on
appeal that his son could have owned the drugs, he testified at trial that the
drugs did not belong to his son.

As
to the claim that Smith planted the drugs as a set-up, Appellant and his wife
testified that Smith and his girlfriend had been in his home for about an hour
and had access to several rooms in the house. 
Five minutes after Smith left, the police arrived.  There was no other evidence presented by the
defense that Smith had been at the house. 
Although Smith was subpoenaed, he did not testify.  The defensive evidence does not greatly
outweigh the evidence presented by the State. 
The trial court evaluated the credibility and demeanor of all the
witnesses and chose to disbelieve Appellanat=s theory.  Because the evidence is factually sufficient,
we overrule Point of Error No. Three and affirm the judgment below.

 

 

July 25, 2002

                                                           
             

ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)