Affirmed and Opinion filed March 11, 2004









Affirmed and Opinion filed March 11, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01221-CR

____________

 

BARRY
WAYNE WOOTTON, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 

 



On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 903,940

 

 



O P I N I O N

In this case, we must decide
whether the evidence is legally and factually sufficient to support appellant
Barry Wayne Wootton=s
conviction for possession of anhydrous ammonia with the intent to manufacture
methamphetamine under section 481.124 of the Texas Controlled Substances
Act.  This appears to be the first case
to address the sufficiency of the evidence to support a conviction under this
recently enacted statute.  We hold the
evidence is sufficient, overrule appellant=s
additional issue regarding the admission of prior convictions, and affirm the
trial court=s judgment. 









I.  Procedural
and Factual Background

On February 26, 2002, Officer
Robert Clark of the Harris County Sheriff=s
Department, conducted surveillance on a hotel room off of Interstate 45 after
receiving information from a confidential source that two individuals known to
be methamphetamine Acooks,@ John
Forster and Pamela Edwards, were manufacturing and selling methamphetamine in
the room.  Officer Clark testified that,
during his surveillance, he saw appellant arrive at the hotel in a Jeep.  According to Officer Clark=s
testimony, appellant initially removed two large, white cotton bags from the
back of the Jeep and entered the hotel room that was under surveillance.  Approximately thirty minutes later, Officer
Clark saw appellant leave the room, go to the Jeep, and retrieve a black
briefcase and a black plastic bag, which Officer Clark described as looking
like a trash bag.  Officer Clark then
observed appellant removing additional packages from the back of a Suburban,
which the officer recognized as belonging to Forster. 

When Officer Clark resumed
surveillance the next day, he observed two white males walk separately to the
hotel room in question, stay for a minute or two, and then leave.  Officer Clark gave this information to his
sergeant and left the scene.  Officer
Richard Corrales with the Houston Police Department Narcotics Division and his
partner went to the scene and continued the surveillance.  They saw appellant exit the room in question
approximately four times carrying large trash bags to the Jeep, while Forster
made three trips with bags to the Suburban. 
Forster, Edwards, and two children then left the hotel in the Suburban;
appellant drove behind them in the Jeep. 
When both drivers failed to signal as they made right turns onto a
service road, Officer Corrales advised other police units to conduct a traffic
stop.  Once the vehicles were stopped, a
narcotics dog searched the perimeter of each vehicle and showed interest in
both the Suburban and the Jeep.








The officers searched appellant=s Jeep
further and recovered three Atanks.@[1]  A test performed on one of the tanks indicated
the presence of anhydrous ammonia.  The
search also uncovered a yellow bin. 
Inside the bin, officers found, among other things, a pack of paper
coffee filters and a plastic container holding stripped batteries.[2]  In addition, Officer Mark Smith and Officer
Corrales testified that they recovered a small leather case with a syringe
containing a controlled substance later identified as methamphetamine.  Inside Forster=s
Suburban, officers discovered marijuana, methamphetamine, at least one syringe,
lighter fluid, several packages of powder that appeared to be crushed
Ephedrine, and used coffee filters.[3]  The officers also recovered an
industrial-type blower.[4]


Appellant was charged by
indictment with the offense of possession of anhydrous ammonia with the intent
to manufacture methamphetamine.[5]  See Tex.
Health & Safety Code Ann. ' 481.124
(Vernon 2003).  A jury found appellant
guilty and, after finding the enhancement paragraphs true,[6]
assessed punishment at twenty-five years=
confinement in the Texas Department of Criminal Justice, Institutional
Division.








II.  Issues
Presented

Appellant raises the following
issues for appellate review:

(1)                   Did the trial court err by
allowing evidence of appellant=s two prior cocaine-possession convictions for
impeachment purposes during the guilt/innocence phase of trial? 

(2)B(3)           Is the evidence legally and factually sufficient to prove
appellant=s knowledge of the
existence and unlawful nature of the substance detected in the tested tank?

(4)B(5)           Is the evidence legally and factually sufficient to prove
appellant=s intent to manufacture
methamphetamine? 

 




III.  Analysis
and Discussion

A.                
Admission of Prior Convictions in Guilt/Innocence Phase of the Trial 

 

In his first issue, appellant
contends the trial court erred in admitting evidence of two 1992 convictions
for unlawful possession of cocaine during the guilt/innocence phase of trial.[7]  Although the issue was not raised by the
State, this court will first address whether appellant preserved error for
appellate review.  See Jones v. State,
942 S.W.2d 1, 3 n.1 (Tex. Crim. App. 1997) (APreservation
of error is a systemic requirement that a first-level appellate court should
ordinarily review on its own motion.@).








The record indicates that, prior
to trial, the State gave appellant notice that it intended to use appellant=s prior
convictions for impeachment purposes. 
Appellant then filed a motion for a Theus hearing, requesting the
court to review the Theus factors before permitting impeachment with
appellant=s prior convictions.  See Theus v. State, 845 S.W.2d 874
(Tex. Crim. App. 1992).  At the end of
the first day of testimony, outside of the jury=s
presence and prior to appellant taking the stand, the trial court conducted a
hearing on the motion and ruled that appellant=s
convictions were admissible.  Two days
later, on direct examination, appellant admitted he had been convicted of
felony possession of cocaine twice in 1992 and discussed the punishments he had
received for those convictions.  

As a general rule, a complaint
regarding improperly admitted evidence is waived if the same evidence is
introduced by the defendant himself.  See
Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (op. on reh=g).  An exception to this general rule applies
when the accused introduces the evidence in an effort to meet, rebut, destroy,
deny, or explain evidence that already has been improperly admitted.  Id. 
This exception does not apply in this case.  The record indicates appellant testified
about his prior convictions on direct examination in an effort to preempt
questions anticipated by the State during cross-examination.[8]  By testifying on direct examination as to his
1992 convictions, appellant waived any error relating to the trial court=s ruling
regarding admissibility of the convictions. 
Accordingly, we overrule appellant=s first
issue.

B.               
Legal and Factual Sufficiency of the Evidence

 

In his second, third, fourth, and
fifth issues, appellant contends the evidence is legally and factually
insufficient to support his conviction because the State failed to establish
that (1) he knew the tested tank contained anhydrous ammonia, and (2) he had
the intent to manufacture methamphetamine. 
Specifically, appellant argues that the State failed to produce evidence
of appellant=s knowledge and intent because
(1) none of the tanks were marked; (2) appellant did not act unduly suspicious
when stopped by police; (3) the State did not offer into evidence any
admissions by appellant regarding his knowledge of the tanks=
contents; and (4) Officer Corrales testified that he did not know how the tanks
were used. 








In evaluating a legal-sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State=s
evidence or believe that appellant=s
evidence outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
We may not overturn the jury verdict unless it is irrational or
unsupported by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991).  The jury, as the trier
of fact, Ais the sole judge of the
credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact resolved
conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).








In contrast, when evaluating a
challenge to the factual sufficiency of the evidence, we view all the evidence
without the prism of Ain the
light most favorable to the prosecution@ and set
aside the verdict only if it is Aso
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@  Johnson v. State, 23 S.W.3d 1, 6B7 (Tex.
Crim. App. 2000). This concept embraces both Aformulations
utilized in civil jurisprudence, i.e., that evidence can be factually
insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust,
or (2) the adverse finding is against the great weight and preponderance of the
available evidence.@  Id. at 11. 
Under this second formulation, we essentially compare the evidence which
tends to prove the existence of a fact with the evidence that tends to disprove
that fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  In conducting the
factual-sufficiency review, we must employ appropriate deference so that we do
not substitute our judgment for that of the fact-finder.  Id. at 648.  Our evaluation should not intrude upon the
fact-finder=s role as the sole judge of the
weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 

Knowing Possession

Appellant first contends the
evidence is legally and factually insufficient to support his conviction
because the State failed to establish that appellant knew of the existence and
unlawful nature of the anhydrous ammonia detected in one of the tanks recovered
from appellant=s Jeep.  Anhydrous ammonia, a colorless liquified gas,
is a key ingredient in the production of methamphetamine.  Although anhydrous ammonia is not an unlawful
substance per se, under section 481.124 of the Texas Health and Safety Code it
is an offense to possess or transport anhydrous ammonia with the intent to
unlawfully manufacture a controlled substance. 
See Tex. Health &
Safety Code Ann. '
481.124(a)(1) (Vernon 2003).  This
section of the Texas Controlled Substances Act became effective on September 1,
2001.  See '
481.124.  Neither party has cited, nor
has this court found, a case that construes this particular section of the
Health and Safety Code under a legal and factual sufficiency review.








The State argues that the statute
does not by its terms require knowing possession of the anhydrous ammonia.[9]  See id.  However, mere omission of an element cannot
be construed to plainly dispense with one. 
See Tex. Pen. Code Ann.
' 6.02(b)
(Vernon 2003) (stating that if definition of offense does not prescribe mental
state, one is required unless definition plainly dispenses with any mental
state element); Aguirre v. State, 22 S.W.3d 463, 470B77 (Tex.
Crim. App. 1999) (construing section 6.02(b) and setting forth factors to
determine when a statute plainly dispenses with a mental state element).  The State does not contend there was a
manifest intent to dispense with the requirement of a mental state.  Consequently, section 6.02(c) of the Texas
Penal Code requires that the mental state amount at least to recklessness.  See Tex.
Pen. Code Ann. ' 6.02(c);
Aguirre, 22 S.W.3d at 472.  The
indictment in this case alleged that appellant Aunlawfully,
with intent to unlawfully manufacture a controlled substance, namely,
[m]ethamphetamine, did intentionally and knowingly possess [a]nhydrous
[a]mmonia.@ 
The charge limited the jury instructions to the mental states alleged in
the indictment, specifically intentionally or knowingly.  See Reed v. State, 117 S.W.3d 260, 265
(Tex. Crim. App. 2003).  Though we review
the legal sufficiency of the evidence against a hypothetically correct jury
charge under Malik, the hypothetically correct jury charge is not
measured simply by the elements of the offense as set out in the Penal Code
without reference to the allegations in the indictment.  See Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000).  Therefore, we
analyze the sufficiency of the evidence based on whether appellant
intentionally or knowingly committed the offense as modified by the charging
instrument.  See id.   








Section 481.124 of the Texas
Health and Safety Code is part of the Texas Controlled Substances Act.  See Tex.
Health & Safety Code Ann. '' 481.001,
481.124.  APossession@ under
the Act is defined as actual care, custody, control, or management.  See '
481.002(38).  Anhydrous ammonia is not
specifically listed as a controlled substance under the Act.  See
''
481.002(5), 481.032.  However, case law
construing this definition of possession in the context of knowing or
intentional possession of a controlled substance is instructive.  To establish the unlawful possession of a
controlled substance, the State must prove that the accused (1) exercised
actual care, control, or custody over the substance, and (2) was conscious of
his connection with it and knew what it was. 
Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  Evidence that affirmatively links the accused
to the contraband suffices for proof that he possessed it knowingly.  Id. 
This evidence can be either direct or circumstantial.  Id. 
In either case, the evidence must establish the accused=s
connection with the controlled substance was more than just fortuitous.  Id. 
However, the evidence need not be so strong that it excludes every other
outstanding reasonable hypothesis except the defendant=s
guilt.  Id. at 748.      








When the accused is not in the
exclusive possession of the place where the substance is found, it would be
improper to conclude that the accused had knowledge of and control over the
contraband unless there are additional independent facts and circumstances that
affirmatively link the accused to it.  Guiton
v. State, 742 S.W.2d 5, 8 (Tex. Crim. App. 1987).  Mere presence at a place where contraband is
being used or possessed does not justify a finding of joint possession.  Nunn v. State, 640 S.W.2d 304, 305
(Tex. Crim. App. 1982).  Among such
additional factors that can establish the affirmative link are (1) the accused=s
presence at the time the contraband was discovered; (2) whether the contraband
was in plain view; (3) the accused=s
proximity to and the accessibility of the contraband; (4) whether the accused
appeared to have used the contraband, e.g., whether the accused was under the
influence of narcotics when arrested; (5) whether the accused possessed other
contraband when arrested; (6) whether the accused made incriminating statements
when arrested; (7) whether the accused attempted to flee; (8) whether the
accused made furtive gestures; (9) whether there was an odor from the
contraband; (10) whether other contraband or related  paraphernalia was present; (11) whether the
place where the contraband was found was enclosed; and (12) whether the accused
owned or had the right to possess the place where the contraband was
found.  Hyett v. State, 58 S.W.3d
826, 830 (Tex. App.CHouston [14th Dist.] 2001,
pet. ref=d).  Though courts have recognized the foregoing
possible affirmative links, there is no set formula of facts that necessitates
a finding of affirmative links sufficient to support an inference of knowing
possession.  Porter v. State, 873
S.W.2d 729, 732 (Tex.
App.CDallas 1994, pet. ref=d).  Affirmative links are established by the
totality of the circumstances.  See
Sosa v. State, 845 S.W.2d 479, 483B84 (Tex. App.CHouston [1st Dist.] 1993,
pet. ref=d)
(finding totality of circumstances was of such a character that jury reasonably
could have concluded defendant was aware of the contraband and exercised
control over it).  The number of factors
present in a given case is not as important or compelling as the logical force
the factors have in establishing the elements of the offense.  See Jones v. State, 963 S.W.2d 826,
830 (Tex. App.CTexarkana 1998,
pet. ref=d).  








In this case, Officer Clark
testified that a confidential source notified him of two methamphetamine Acooks@ (Forster
and Edwards), who were manufacturing and selling methamphetamine in Room 216 of
a hotel in Harris County.  According to
Officer Clark, the foot traffic C the two
males he observed separately enter the room briefly and leave C was
consistent with the sale of narcotics. 
He saw appellant remove several large bags from the back of appellant=s Jeep as
well as from Forster=s
Suburban and take them into the room in question.  Officer Clark testified that the bags
appellant carried up to the room were consistent with the bags recovered from
his Jeep the next day.  The officers also
observed appellant removing trash bags from the room and placing them inside
his Jeep.  When police searched appellant=s Jeep,
they found three tanks in large trash bags, one of which tested positive for
anhydrous ammonia.  Officer Clark
testified that another tank had a distinctive discoloration on the brass valves
that suggested the tank was being used to store anhydrous ammonia.  The Jeep was registered in appellant=s name,
and appellant was its sole occupant when officers stopped him and discovered
the ammonia.  Police also found coffee
filters and stripped batteries, both of which are items used to cook
methamphetamine.  In addition, the
officers recovered a syringe containing methamphetamine from an organizer
behind the front passenger=s seat of
appellant=s Jeep.  Although the testimony was inconsistent as to
whether an industrial-type blower was also discovered in appellant=s Jeep,
any conflict in the testimony is a conflict for the jury to resolve.  See Wyatt v. State, 23 S.W.3d 18, 30
(Tex. Crim. App. 2000).  After reviewing
the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  

Appellant also claims the
evidence is factually insufficient to support his conviction.  When evaluating a factual-sufficiency
challenge, we must discuss the evidence appellant claims is most important in
allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003).  Here, appellant cites the same
reasons for factual insufficiency as he raised in this legal-sufficiency
challenge, namely (1) the tanks were not marked; (2) appellant did not act
unduly suspicious when stopped by police; (3) the State did not offer into
evidence any admissions made by appellant regarding his knowledge of the tanks=
contents; and (4) Officer Corrales testified that he did not know how the tanks
were used.  At trial, appellant claimed
he thought the tanks were ALP
butane, propane tanks.@  He also testified that the trash bags he
carried into the hotel room contained clothing and personal items.  Forster testified that appellant was merely
staying with him at the hotel and was not aware of the contents of the tanks
when Forster asked him to carry them in appellant=s Jeep.  Forster stated that the tanks were already in
the trash bags when appellant went with him to retrieve them from the supplier
and that the tanks never left the Jeep. 
In addition, Forster testified that the syringe and the organizer
belonged to him.    








The jury is the sole judge of the
facts, the credibility of the witnesses, and the weight to be given the
evidence.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
Therefore, the jury may believe or disbelieve all or part of any witness=s
testimony.  See Jones v. State,
984 S.W.2d 254, 258 (Tex. Crim. App. 1998). 
A reviewing court will not sustain a factual-sufficiency challenge
simply because the record contains conflicting evidence upon which the
fact-finder could have reached a different conclusion.  See Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997).  A
reviewing court may disagree with the fact- finder=s
resolution of conflicting evidence only when it is necessary to prevent
manifest injustice.  See id. at
164B65.  A jury decision is not manifestly unjust
merely because the jury resolved conflicting views of evidence in favor of the
State.  See Cain, 958 S.W.2d at
410.

We do not find evidence in the
record that greatly outweighs the evidence supporting the trial court=s
judgment.  Accordingly,  the jury=s
decision was not so contrary to the weight of the evidence as to be clearly
wrong and manifestly unjust. 

For the reasons discussed above,
we conclude the State presented legally and factually sufficient evidence to
show that appellant knew of the existence and nature of the anhydrous ammonia,
and we overrule appellant=s second
and third issues.

Intent to Manufacture
Methamphetamine

In his fourth and fifth issues,
appellant contends that the State failed to establish that appellant possessed
the anhydrous ammonia with the intent to manufacture methamphetamine.  Under section 481.124(b), the intent to
unlawfully manufacture the controlled substance methamphetamine is presumed if
the actor possesses or transports anhydrous ammonia in a container or
receptacle that is not designed and manufactured to lawfully hold or transport
anhydrous ammonia.  See Tex. Health & Safety Code Ann. '
481.124(b)(1).  As it applies in this
case, a substance is presumed to be anhydrous ammonia if the substance is in a
container or receptacle that is (1) designed and manufactured to lawfully hold
or transport anhydrous ammonia; or (2) not designed and manufactured to
lawfully hold or transport anhydrous ammonia if a properly administered field
test of the substance using a testing device or instrument designed and
manufactured for that purpose produces a positive result for anhydrous
ammonia.  See Tex. Health & Safety Code Ann. '
481.124(c)(1)B(2). 








In this case, three tanks were
recovered from appellant=s
Jeep.  Officer Clark testified that
anhydrous ammonia tanks are typically stamped AAnhydrous
Ammonia Only@ as required by the Department of
Transportation.  None of the tanks in
this case had such a label.  Officer
Clark also testified that two of the tanks had brass valves which had turned
blue in color, indicating the presence of anhydrous ammonia.  He explained that had the tanks been designed
or manufactured to lawfully hold anhydrous ammonia, the valves would not be
blue because there would not have been brass in contact with anhydrous
ammonia.  After recovering the tanks from
appellant=s Jeep, the officers tested one
of the tanks using a tool called a ADreger
pump@ with a
tube manufactured to detect anhydrous ammonia. 
The results were positive for the presence of anhydrous ammonia.  This evidence is legally sufficient to raise
the statutory presumption of intent to manufacture methamphetamine.  

Appellant does not attempt to
show that the tanks were designed and manufactured for anhydrous ammonia.  In fact, appellant admits the tanks were not
labeled.  At trial, appellant testified
that he thought the tanks were ALP
butane, propane tanks.@  Appellant does not dispute that one of the
tanks tested positive for anhydrous ammonia nor does he contest the officer=s
testimony regarding the blue valves on two of the tanks.  Instead, appellant contends the evidence is
legally insufficient because he was not aware of the contents of the tanks and,
therefore, could not have had the requisite intent to manufacture
methamphetamine.  








Even if appellant=s
evidence was sufficient to rebut a presumption of an intent to manufacture
methamphetamine, the State=s
evidence still was sufficient to support an inference of that intent.  As the trier of fact, the jury was free to
disbelieve appellant=s
evidence.  See Williams v. State,
692 S.W.2d 671, 676 (Tex. Crim. App. 1984). 
Despite testimony from appellant and Forster that appellant was not
aware of the tanks=
contents, officers discovered many of the ingredients used to manufacture
methamphetamine in appellant=s Jeep
and Forster=s Suburban.  Officers also recovered methamphetamine from
both vehicles.  In addition, officers
testified that they observed appellant carrying bags into and out of a hotel
room under surveillance for methamphetamine-related activity.  The evidence was thus legally sufficient to
prove appellant=s intent
to manufacture methamphetamine.  

Appellant also claims the
evidence is factually insufficient for the same reasons he stated in his
legal-sufficiency challenge.  In
conducting a factual-sufficiency review, A[a]ppellate
courts should only exercise their fact jurisdiction to prevent a manifestly
unjust result; . . . courts >are not
free to reweigh the evidence and set aside a jury verdict merely because the
judges feel that a different result is more reasonable.=@  Clewis v. State, 922 S.W.2d 126,
135 (Tex. Crim. App. 1996).  We do not
find evidence in the record that greatly outweighs the evidence supporting the
trial court=s judgment.  For the reasons discussed above, the jury=s
decision was not so contrary to the weight of the evidence as to be clearly
wrong and manifestly unjust.  

We conclude the State presented
legally and factually sufficient evidence to show that appellant possessed
anhydrous ammonia with the intent to manufacture methamphetamine.  Accordingly, we overrule appellant=s fourth
and fifth issues.

IV.  Conclusion

Appellant failed to preserve
error on his first issue challenging the trial court=s
admission of two prior convictions during the guilt/innocence phase of his
trial.  By introducing evidence of these
convictions during direct examination, appellant waived the complaint he raises
in this appeal; therefore, we do not reach the merits of his first issue.  We find no merit in appellant=s
remaining issues challenging the legal and factual sufficiency of the evidence
to support his conviction.  The record
contains legally and factually sufficient evidence to show that appellant
knowingly possessed the anhydrous ammonia with the intent to manufacture methamphetamine.








Having overruled all of appellant=s issues,
we affirm the trial court=s
judgment.

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion filed March 11, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Witnesses
during trial used the terms Atanks,@ Acylinders@ and Acanisters@ to
refer to these containers. For clarity, we use the term Atanks@ throughout the opinion to refer to the items.





[2]  During trial,
there was a question as to whether the container with the batteries came from
appellant=s Jeep or Forster=s
Suburban.  Officer Mark Smith, who
conducted the search of appellant=s Jeep
with the narcotics dog, testified that he recovered the plastic container from
appellant=s Jeep and then walked from the Jeep to the Suburban
to show Officer Corrales what he had found. 
When Officer Smith opened the plastic container, he was told he should
not be handling the contents.  At that
point, Officer Smith put the container down, which happened to be in Forster=s Suburban. 
Officer Corrales also testified to these events.   





[3]  Officers also found white tablets
and a small syringe containing a substance inside Edwards=s purse and at least two syringes
in Forster=s pocket. 





[4]  The testimony at trial was
inconsistent as to whether the blower came from appellant=s Jeep or Forster=s Suburban.





[5]  The record in
this case shows that the complaint was filed in February of 2002, and that
appellant was charged by indictment in April of 2002. 





[6]  The indictment
contained two enhancement paragraphs for appellant=s 1992 felony conviction for possession of a
controlled substance and his 2000 felony conviction for tampering with
evidence.





[7]  The trial
court allowed three prior convictions into evidence, two for possession of a
controlled substance from 1992 and one for tampering with evidence in
2000.  Appellant claims error with regard
to the 1992 convictions only.





[8]  After the
trial court ruled that appellant=s prior
convictions were admissible, defense counsel stated that Ain view of the Court=s ruling
and as a matter of trial tactics, I intend to bring out the prior convictions
on the record rather than waiting for the State to use them on cross, and I
want the record to reflect that I am not waiving my objection to the
admissibility of these prior convictions and I am admitting them only on direct
because of the Court=s ruling as a matter of trial tactics.@





[9]  In addition,
the State claims section 481.124(b)(1) creates a presumption that an accused=s anhydrous ammonia possession is knowing when he
transports the substance in a Acontainer or receptacle that is not designed and
manufactured to lawfully hold or transport anhydrous ammonia.@  The State=s characterization of the presumption is
incorrect.  The statute states that the
intent to unlawfully manufacture methamphetamine is presumed if the actor
possesses or transports anhydrous ammonia in a container or receptacle not
designed and manufactured for anhydrous ammonia.  See Tex.
Health & Safety Code Ann. ' 481.124(b)(1)
(emphasis added).