

# NUMBER 13-22-00336-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**FREDERICK JOSEPH TALLMAN JR.,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

### On appeal from the 440th District Court
### of Coryell County, Texas.

# MEMORANDUM OPINION[1]

### Before Chief Justice Contreras and Justices Silva and Peña
### Memorandum Opinion by Chief Justice Contreras

A jury convicted appellant Frederick Joseph Tallman Jr. of possession of a

controlled substance in Penalty Group 1 in an amount over four grams but less than 200

---

[1] This case was transferred from the Tenth Court of Appeals in Waco to this Court pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). Appellant elected for the trial court to impose punishment, and the trial court sentenced appellant to five years' incarceration, suspended the sentence, and placed appellant on five years' community supervision. By his sole issue, appellant contends that the evidence was legally insufficient to support his conviction. We affirm.

## I.     BACKGROUND

Trial began on April 4, 2022. Sergeant Jacob Smith of the Copperas Cove Police Department (CCPD) testified that on August 11, 2019, he initiated a traffic stop of a pickup truck for "an inoperable high mounted brake lamp" and a hole in the truck's license plate obscuring one of the plate's characters. Sergeant Smith testified that he requested and received the driver's identification, listing the driver as appellant. When Sergeant Smith walked back to his police vehicle to run appellant's information, he saw "[appellant] . . . messing with something in his [center] console." Sergeant Smith noted that when he returned to the truck to talk with appellant, appellant "jumped like [Sergeant Smith] had scared him." Dashboard camera footage from Sergeant Smith's police vehicle was admitted into evidence and corroborates his testimony. Sergeant Smith recalled that appellant was acting "jittery," leading him to believe that appellant was nervous about something. He also observed that an individual in the truck's front passenger seat, Edith Tratt, someone "known to [CCPD] as a narcotics offender," did not make eye contact with him, which raised his suspicion. Sergeant Smith testified that the presence of a butane torch lighter, "commonly used with meth pipes," in appellant's truck in plain view was also notable.

2

Sergeant Smith asked appellant to exit the truck—in part to show appellant the hole in the license plate and in part to evaluate appellant's demeanor—and conducted a frisk for weapons. He felt a "bowl item" in appellant's front right pocket, asked appellant what it was, and asked to see the item. Appellant answered that it was "just a Tupperware container that he puts coins in," showed Sergeant Smith the bottom of the container, and then, according to Sergeant Smith, "very quickly put the container back in his pocket." Sergeant Smith testified that he "still didn't have probable cause to force [appellant] to show [him] the entirety of the container," but he "suspected there might be something illegal in it." Sergeant Smith asked appellant if he could search the truck. He stated that rather than answering with a simple yes or no, appellant was "overly defensive," "very spastic," and "grasp[ed] at his pockets."

Sergeant Smith testified that his colleague, CCPD Officer Jonathan Bryan, asked Tratt to exit appellant's truck and that Tratt was "also acting very strangely"—she walked away from the truck and "wasn't carrying her hands in a normal fashion." Officer Bryan testified that he asked Tratt to follow him back toward Sergeant Smith's vehicle and that Tratt "started to [follow him], and then . . . kind of walked away." The officers then found a shattered "methamphetamine pipe on the ground in the direct vicinity of where [Tratt] had stepped away from [appellant's truck]." Officer Bryan clarified that "the meth pipe was right by [Tratt's] heel." Officer Bryan informed the jury that he did not see the pipe on the ground when he first walked to appellant's truck and that after seeing the pipe, he "immediately put [Tratt] in handcuffs."

Sergeant Smith asserted that, at this point, the officers believed they had probable

3

cause to search appellant's person and vehicle, and they did so. In the alleged coin container in appellant's pocket, Sergeant Smith found 1.9 grams of methamphetamine. Sergeant Smith found another 0.2 grams of methamphetamine in appellant's wallet. In his police report and trial testimony, Sergeant Smith noted that his search of appellant's truck yielded "a black tin container" found "in the center seat underneath the center console" which contained 0.2 grams of marijuana and a plastic baggie containing 3.6 grams of methamphetamine. He testified that appellant took responsibility for all of the drugs found in the truck.

Appellant testified in his own defense. He stated that he was not "rummaging through" anything in his vehicle when Sergeant Smith was running his information through dispatch but was instead looking for his proof of insurance. Appellant denied that Tratt had anything in her hands when she exited his truck, though he did affirm that the officers found the alleged meth pipe on the ground "almost straight down from where [Tratt] was standing." Appellant admitted that he had methamphetamine on his person, that more methamphetamine was found in his truck, and that he took responsibility for all of the contraband at the scene of the traffic stop, which he said was to protect Tratt. At trial, however, appellant testified that he did not know that the drugs were in his car. When asked on cross-examination if he was "blaming [Tratt] for what was in [his truck's] center console," appellant testified the drugs were not found in the center console but were "stuffed" "under the—like how the seat folds down." The parties rested, the jury found appellant guilty as charged, and the trial court sentenced appellant as noted above. This appeal followed.

4

## II. SUFFICIENCY OF THE EVIDENCE

Appellant concedes that the evidence was legally sufficient to prove that he possessed the approximately two grams of methamphetamine found in his pocket and wallet. By his sole issue on appeal, he contends that the evidence was legally insufficient to prove that he possessed the additional amount found in his truck. He therefore argues that "this Court is called upon to reform the judgment to the lesser included offense of third-degree possession of [a] controlled substance" and remand for a new punishment hearing. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c); *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014) (stating that an appellate court is "required" to reform a judgment to reflect conviction on a lesser-included offense if: (1) in the course of convicting appellant of the greater offense, the jury must have necessarily found every element necessary to convict appellant on the lesser-included offense; and (2) there is sufficient evidence to support conviction on the lesser-included offense).

### A. Standard of Review

"In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence 'in the light most favorable to the verdict' to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (quoting *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim.

5

App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "On appeal, reviewing courts determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (cleaned up). "We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony." *Delagarza*, 635 S.W.3d at 723 (first citing *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); and then citing TEX. CODE CRIM. PROC. ANN. art. 38.04). "[A] factfinder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted." *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

## B. Applicable Law

A hypothetically correct jury charge would instruct the jury that the elements of the offense of possession of a controlled substance as charged here are (1) the defendant

(2) knowingly or intentionally (3) possessed (4) four or more grams but less than 200 grams of methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d); *Allen v. State*, 249 S.W.3d 680, 689 (Tex. App.—Austin 2008, no pet.). "'Possession' means actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39). Thus, to successfully prosecute a defendant for possession of a controlled substance, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the [substance] possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Espino-Cruz v. State*, 586 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

The State must prove that the defendant's connection with the contraband "was more than fortuitous." *Evans*, 202 S.W.3d at 161. Hence, a defendant's mere presence at a location where contraband is found is insufficient, by itself, to establish the defendant's knowledge or possession of the contraband. *Id.* at 162; *Jenkins v. State*, 76 S.W.3d 709, 712 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd) ("[W]hen the contraband is not found on the accused's person or it is not in the exclusive possession of the accused, additional facts and circumstances must link the accused to the contraband.").

The Texas Court of Criminal Appeals has compiled a non-exhaustive list of factors which may link the defendant to the knowing possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed

other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. And "the absence of various links does not constitute evidence of innocence to be weighed against the affirmative links present." *Espino-Cruz*, 586 S.W.3d at 544. While the factors may help guide a court's sufficiency analysis, "ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 413–14 (citing *Jackson*, 443 U.S. at 318–19).

### C. Analysis

Appellant argues that contemporary courts have turned the various affirmative links factors "into meaningless catch phrases, molded to whatever facts arise in a possession case." Rather than apply modern case law, appellant asks this Court to "return[] the applicable links to their original applications." In briefing his argument, appellant analyzes the factors he considers germane to the affirmative links analysis here, argues that each factor alone fails to support a finding that he possessed the methamphetamine in his truck, and ultimately contends that the evidence was insufficient

8

to show he possessed the contraband.

Appellant first focuses on the issue of his presence during the search of his truck. *See Tate*, 500 S.W.3d at 414 (listing a defendant's "presence when a search is conducted" as one of the affirmative link factors). He points this Court to what he states was the source of the presence factor: *Williams v. State*, 498 S.W.2d 340 (Tex. Crim. App. 1973). In *Williams*, Austin police executed a search warrant at a trailer occupied by four people and found drugs in one of the bedrooms. *Id.* at 340–41. The four were arrested and charged with possession of heroin. *Id.* at 341. The court of criminal appeals ultimately reversed Williams's conviction for possession of a controlled substance in part because: (1) "even though the appellant was in the trailer house at the time the search warrant was executed, he was not found to be in personal possession of narcotics"; and (2) "even though the evidence shows that the utility bills for the trailer were in appellant's name, no other evidence, other than the fact of appellant's presence, was introduced to show he occupied the premises." *Id.* Given that holding, appellant contends that the presence factor "should properly be stated as 'is the accused's presence tied to either exclusive or joint possession of the drugs?'" He concludes, "Here, nothing indicates that [appellant]'s mere presence in the vehicle at the time of the search sheds any light on his possession of the contraband not on his person."

But as noted, while mere presence cannot alone support a conviction for possession of a controlled substance, "presence or proximity, when combined with other evidence, either direct or circumstantial . . . , may well be sufficient to establish [possession] beyond a reasonable doubt." *Evans*, 202 S.W.3d at 161–62; *see Tate*, 500

9

S.W.3d at 414. Here, appellant was present in the enclosed cabin of his pickup truck when Sergeant Smith initiated a stop resulting in his searching the truck and discovering contraband. While these facts alone may or may not support appellant's conviction, they may be considered in our analysis in conjunction with other evidence, and they support the jury's finding that he possessed the contraband. *See Tate*, 500 S.W.3d at 414; *Johnson v. State*, 583 S.W.3d 300, 310 (Tex. App.—Fort Worth 2019, pet. ref'd) (per curiam) (mem. op.) (affirming appellant's conviction because, among other things, he "was in an enclosed space with the controlled substances, thus establishing a link between himself and the illegal items found in the vehicle" in which he was riding); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing "appellant's presence when the house was searched" as a factor linking him to contraband found in the house); *see also Vega v. State*, No. 05-21-00225-CR, 2022 WL 17883796, at *2 (Tex. App.—Dallas Dec. 23, 2022, no pet.) (mem. op., not designated for publication) (affirming appellant's conviction because, among other things, "appellant was present during the search" and "he had been sitting in the driver's seat of the car immediately before officers found the backpack [containing contraband] directly underneath where he sat"); *Briscoe v. State*, No. 13-20-00445-CR, 2022 WL 710083, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.) (mem. op., not designated for publication) (affirming the same where appellant "was not merely present" where the object containing contraband had been found; she had also previously been "in close proximity" to it).

Appellant next contends that "[t]he State failed to demonstrate the distance or

10

proximity of the alleged contraband to [a]ppellant, or in fact, whether the area would have been accessible to [a]ppellant." *See Tate*, 500 S.W.3d at 414 (listing a defendant's "proximity to and the accessibility of the narcotic" as affirmative link factors). But both he and Sergeant Smith testified that the drugs were located by the center console underneath the folded front center seat of his truck—certainly in proximity to the driver's seat which appellant occupied. We conclude the proximity of the contraband in appellant's truck to appellant is a link supporting the jury's finding that he possessed the contraband. *See Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 163 (listing the facts that appellant was sitting directly in front and within arm's reach of fourteen grams of cocaine as "two extremely strong 'presence' and 'proximity' links"); *see also Gomez v. State*, No. 04-21-00296-CR, 2022 WL 17970585, at *3 (Tex. App.—San Antonio Dec. 28, 2022, no pet.) (mem. op., not designated for publication) (affirming appellant's conviction because, among other things, "the evidence establishe[d that he] was not only in the presence of contraband, but he was also within reach of the backpack containing the contraband"); *Vega*, 2022 WL 17883796, at *2; *Briscoe*, 2022 WL 710083, at *4.

Appellant claims that the mere fact that he "controlled or had the right to possess the place where the drugs were found" does not support his conviction. *See Tate*, 500 S.W.3d at 414 (listing a defendant's ownership of and "right to possess the place where the drugs were found" as affirmative link factors). He notes that "[s]everal courts have cited that the driver of a vehicle in which a controlled substance is found is an affirmative link," but asserts that holding "is a result of an erroneous reading of the original case" which set forth proximity to the contraband as an affirmative-links factor. A reading of the

alleged original case, *Aldridge v. State*, 482 S.W.2d 171 (Tex. Crim. App. 1972), however, supports the various courts' and not appellant's position.

Appellant asserts that *Aldridge* stands for the proposition that for the inference of possession to apply to the driver of a vehicle, the driver must "exercise both legal possession and control over the vehicle" and "be the sole occupant of the car, which helps establish exclusive control, that supports an inference of knowing possession." But in *Aldridge*, the court of criminal appeals concluded that sufficient evidence existed to tie appellant—one of five occupants in a car—to contraband in the car because, among other factors, the contraband "was found in the automobile that belonged to appellant's mother[, and] the appellant was the driver of the automobile at the time of the arrest." *Id.* at 174 ("We conclude that the State met its burden and that the evidence is sufficient to show at least joint possession of the marihuana by the appellant."). Nowhere in *Aldridge* does the court of criminal appeals state or imply that a defendant must be the sole occupant of a vehicle to support a conclusion that the defendant possessed contraband found therein. Here, appellant owned and operated the truck in which the methamphetamine was found—a link that supports the jury's finding that he possessed the methamphetamine. *See Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162 n.12; *Aldridge*, 482 S.W.2d at 174.

Appellant next contends that his possession of other contraband on his person did not support a finding that he possessed the methamphetamine in his truck. *See Tate*, 500 S.W.3d at 414 (listing a defendant's "possess[ion of] other contraband or narcotics when arrested" as an affirmative link factor). He points this Court to *Chavez v. State*, 769

12

S.W.2d 284, 288 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd), from which he alleges the "possession of other drugs" link originated. Appellant argues that *Chavez* relies on two court of criminal appeals cases that make no mention of this link, and that modern case law therefore rests on a "nonexistent foundation." *See Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *Guiton v. State*, 742 S.W.2d 5, 9 (Tex. Crim. App. [Panel Op.] 1987).

While, as appellant correctly claims, *Martin* and *Guiton* do not include protracted discussions about the "possession of other drugs" link, they do both discuss cases that conclude, in part, that the defendants' lack of other drugs in their possession worked to the State's disadvantage in attempting to tie the defendants to the relevant contraband. *See Martin*, 753 S.W.2d at 387 (citing *Heltcel v. State*, 583 S.W.2d 791, 792 (Tex. Crim. App. [Panel Op.] 1979)); *Guiton*, 742 S.W.2d at 9 (quoting *Wiersing v. State*, 571 S.W.2d 188, 190–91 (Tex. Crim. App. [Panel Op.] 1978)). In *Wiersing*, for example, the defendant had been one of three passengers in a car that was ultimately stopped and searched by police, who found a baggie of marijuana tucked underneath one of the seats. *Wiersing*, 571 S.W.2d at 189–90. The State moved to revoke the defendant's community supervision based on his possession of the marijuana found in the vehicle, which the trial court granted. *Id.* at 189. Eventually, the court of criminal appeals reversed the decision, concluding that there was insufficient evidence to tie defendant to the marijuana in part because the officer who searched appellant after the stop did not "find any contraband on appellant when he searched him." *Id.* at 190. As *Wiersing* demonstrates, the court of criminal appeals has long considered a defendant's possession of drugs on his person to

13

be a potential link to his possession of separate contraband. *See id.*; *see also Tate*, 500 S.W.3d at 414. Here, Sergeant Smith found contraband on appellant's person—another fact linking appellant to the meth found in his truck. *See Tate*, 500 S.W.3d at 414; *Wiersing*, 571 S.W.2d at 190; *cf. Allen v. State*, 249 S.W.3d 680, 701 (Tex. App.—Austin 2008, no pet.) ("Possession of another type of contraband than that charged is one of the potential factors that may be considered in determining a link between the accused and the contraband in question.").

Finally, appellant contends that while he claimed responsibility for all of the contraband found in his truck, the Court still must apply the *corpus delicti* rule "stating that a defendant cannot be convicted solely based on his own admission." *See, e.g.*, *Hacker v. State*, 389 S.W.3d 860, 866 (Tex. Crim. App. 2013) ("The *corpus delicti* doctrine requires that evidence independent of a defendant's extrajudicial confession show that the "essential nature" of the charged crime was committed by someone."). But the State did not prove its case based on appellant's admission alone. Instead, it appropriately used appellant's admission as one of many factors to link him to the contraband in his truck. *See Tate*, 500 S.W.3d at 414 (listing "whether the defendant made incriminating statements when arrested" and "whether the conduct of the defendant indicated a consciousness of guilt" as factors to consider in a drug possession case).

In sum, the following evidence raised and challenged by appellant tends to tie him to the contraband found in his truck: (1) appellant was present when Sergeant Smith conducted his search of the pickup truck; (2) appellant owned the truck; (3) the drugs were located by the center console underneath the folded front seat—in proximity to the

14

driver's seat which appellant occupied; (4) appellant possessed additional methamphetamine on his person; and (5) appellant incriminated himself when the drugs were ultimately found, taking full responsibility for their presence at the scene. *See id.*

On top of the challenged affirmative links, we note that more evidence tends to tie appellant to the contraband. First, evidence of other drug paraphernalia was present at the scene: Sergeant Smith and Officer Bryan saw a broken glass pipe on the ground near Tratt's foot, and Sergeant Smith saw a butane torch lighter in open view in appellant's truck—both items that, according to the officers, are typically used for smoking methamphetamine. *See Tate*, 500 S.W.3d at 412, 416–17 (concluding that presence of additional contraband and paraphernalia—there "a syringe loaded with a brown liquid substance"—was evidence linking appellant to other methamphetamine in the vehicle); *see also Briscoe*, 2022 WL 710083, at *4 (concluding the same where "three glass pipes" were found in the vehicle).

Next, Sergeant Smith testified that appellant was jittery and agitated throughout his stop, did not give a normal answer and became defensive when asked if Sergeant Smith could search his truck, and quickly returned the "bowl"-like item to his pocket after being frisked, which led Sergeant Smith to "suspect[] there might be something illegal in it." *See Tate*, 500 S.W.3d at 414.

Finally, Sergeant Smith said that he saw appellant "messing with" something in the truck's center console. *See id.* (listing "whether the defendant made furtive gestures" as a factor linking a defendant to contraband); *Bell v. State*, 356 S.W.3d 528, 533 (Tex. App.—Texarkana 2011) ("[The officer] observed [appellant], who was a passenger in the

15

vehicle, 'inside the car, moving around.' Although the record does not conclusively establish these gestures were furtive, a rational juror could have concluded they were."), *aff'd*, 415 S.W.3d 278 (Tex. Crim. App. 2013). While appellant denied that he was rummaging through anything in his truck or that Tratt possessed a meth pipe, the jury was free to disbelieve his testimony and believe Sergeant Smith's and Officer Bryan's. *See Hernandez*, 161 S.W.3d at 501.

Considering the relevant factors and the entire record, we conclude that "the logical force of all of the evidence, direct and circumstantial," sufficed to link appellant to the methamphetamine found in his truck. *See Evans*, 202 S.W.3d at 162; *see also Jackson*, 443 U.S. at 319; *Tate*, 500 S.W.3d at 414; *Delagarza*, 635 S.W.3d at 723. For that reason, we overrule appellant's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
18th day of May, 2023.

16